Lucy **GRUBER**

v.

**PRUDENTIAL–BACHE SECURITIES, INC., James L. Condron and Jerome N. King.**

**Civ. No. B–86–317(JAC).**

United States District Court, D. Connecticut.

Dec. 31, 1987.

J. Daniel Sagarin, William B. Barnes, Hurwitz & Sagarin, Milford, Conn., Mordecai Rosenfeld, Ira Capsuto, New York City, for plaintiff.

Linda L. Randell, Wiggin & Dana, New Haven, Conn., for defendant Prudential–Bache Securities, Inc.

Richard Blumenthal, Silver, Golub & Sandak, Stamford, Conn., for defendant James L. Condron.

Thomas D. Clifford, Skelley Clifford Vinkels Williams & Rottner, Hartford, Conn., for defendant Jerome N. King.

## RULING ON MOTIONS TO DISMISS

JOSÉ A. CABRANES, District Judge:

This action arises out of an allegedly fraudulent scheme involving several Connecticut limited partnerships. Plaintiff brings this suit pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d) (1982 & Supp. III 1985); §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. §§ 78j(b), 78t(a) (1985); Rule 10b–5 of the Securities and Exchange Commission ("Rule 10b–5"), 17 C.F.R. § 240.10b–5 (1987); the Connecticut Uniform Securities Act, Conn.Gen.Stat. §§ 36–472, 36–498(a)(2); and state common law. The defendants are Prudential–Bache Securities, Inc. ("Prudential–Bache"), a registered broker-dealer; James L. Condron, chief executive officer and sole owner of

J.L. Condron & Co.; and Jerome N. King, a certified public accountant.

On December 12, 1986, the court granted defendants' motions to dismiss the original complaint under Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead fraud with the requisite particularity. In accordance with the court's ruling, plaintiff served an Amended Complaint (filed March 6, 1987) ("Complaint"). Pending before the court are defendants' motions to dismiss this Complaint for continued failure to comply with Fed.R.Civ.P. 9(b) and for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6). Also pending is plaintiff's motion for class action certification pursuant to Fed.R.Civ.P. 23(b)(3).

## BACKGROUND

The facts alleged in the Complaint may be briefly summarized.[1] At some time prior to September 30, 1982, plaintiff Lucy Gruber telephoned Raymond O. Rose at the Prudential–Bache branch office in Stamford, Connecticut. At the time, Rose was employed by Prudential–Bache as a registered representative.[2] Rose advised plaintiff that she would be mailed an Offering Memorandum of Arrow Associates, a Connecticut limited partnership, and urged her to invest. He stated that, if necessary, Prudential–Bache would be able to transfer funds from her account with Merrill Lynch to its facilities. On or about October 4, 1982, plaintiff received through the mail the Offering Memorandum of Arrow Associates and two Prudential–Bache forms designated "Member Firm Authority to Transfer and Receive Account" and "Letter of Authorization to Transfer Securities or Monies between Accounts." Plaintiff immediately executed and returned the forms to the Prudential–Bache office in Stamford, and on or about October 8, 1982 she endorsed and mailed a Merrill Lynch check in the amount of $11,700.08 to the Prudential–Bache office. On or about October 18, 1982, plaintiff wrote a personal check in the amount of $8,299.92, which she mailed to the same address, bringing her entire initial investment up to $20,000. This second check was endorsed by Prudential–Bache.

The Complaint alleges that Arrow Associates was one of five interrelated limited partnerships created by Rose and defendant Condron (the "Partnerships").[3] Interests in the Partnerships were sold to the public with the representation that the business of the Partnerships was investment in publicly traded securities. The Complaint alleges that these Partnerships were created as part of a scheme devised by Condron and Rose to defraud investors. Central to this scheme was the relationship between the Partnerships and Prudential–Bache. From March 1982 to April 1983, Condron advised and managed the Partnerships from his office located at the Prudential–Bache branch office in Stamford.[4] Any checks sent by investors to the Partnerships were endorsed by Prudential–Bache, and any security transactions related to investment in the Partnerships were handled by Prudential–Bache. The Offering Memoranda for the Partnerships (the "Offering Memoranda") were distributed by Prudential–Bache from its Stamford office, and the telephone number for the Partnerships was that of Prudential–Bache.

From March 1982 to April 1983, Rose was employed by Prudential–Bache as a registered representative. He was assigned by James H. Hosp, a vice president in charge of Prudential–Bache's office in Darien, Connecticut, to work with Condron

---

1. For purposes of this motion to dismiss for failure to state a claim upon which relief may be granted, all well-pleaded allegations in the Complaint will be taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

2. Rose was not named as a defendant in this case because of a stay imposed as a result of his personal bankruptcy. *See* Complaint ¶ 5.

3. The other limited partnerships were Prospect Partners, Beta Associates, Dasher Associates, and West Coast Associates.

4. The Complaint does not explain Condron's relationship to Prudential–Bache except to state that Condron's office was situated at the Prudential–Bache branch office in Stamford, Connecticut. *See* Complaint ¶ 16j.

and the J.L. Condron & Co. account at the Prudential–Bache office in Stamford. In accordance with this assignment, Rose and Condron together sought investors in the Partnerships from the Prudential–Bache office. Investors in the Partnerships were also solicited by Hosp and two other registered Prudential–Bache representatives, Cheryl Coudert and Frank Romig, from the Prudential–Bache office in Darien. In return for these solicitations by Prudential–Bache personnel, Condron agreed to channel a substantial part of the Partnerships' business to Prudential–Bache on a commission basis. These commissions were expected to result in substantial financial gain for Prudential–Bache and its employees.

The Complaint first alleges fraudulent misrepresentations in the Offering Memoranda. The Offering Memoranda stated that no compensation would be paid to either Condron or his companies in connection with the sale of Partnership interests, or to any broker-dealer for placing and directing the sale of such interests, although, it is asserted, such compensation was indeed paid. In addition, the Offering Memoranda omitted certain material facts, including the fact that Partnership assets would be illegally commingled and transferred among the Partnerships, and the fact that anticipated brokerage commissions, management fees and interest on margin accounts would be greater than yearly investments.

The Complaint further alleges fraud in the management of the Partnerships. In addition to the commingling of assets and the payment of extraordinarily high commissions to brokerage firms, the management routinely violated legal margin requirements for the partnership accounts to cover debts and margin calls. Further, it is alleged that Condron and Rose improperly "churned" the accounts so as to increase their own fees. The Complaint sets forth

an extensive list of fraudulent activities engaged in by both Condron and Rose in connection with the Partnerships, all in an effort to increase their profits in the form of higher commissions and fees from the Partnership accounts.

Finally, the Complaint alleges fraud on the part of defendant King with respect to the concealment of these activities. King, a certified public accountant, prepared the financial reports and tax statements mailed to the investors of the Partnerships for the fiscal year 1983. It is claimed that in preparing these reports and tax statements, King knowingly overstated the value of the Partnerships' assets and falsely reported their financial well-being.

Plaintiff contends that as a result of the fraudulent practices of defendants, the entire $3,700,000 invested by the public in the Partnerships was lost. Having withdrawn $4,947.21 from her investment in Arrow Associates on or about November 30, 1984, plaintiff brings this action seeking damages in the amount of her total net investment of $15,052.79. She also seeks class certification pursuant to Fed.R.Civ.P. 23(b)(3) for a class consisting of all investors in the Partnerships.

## DISCUSSION

Defendants move under Fed.R.Civ.P. 9(b) to dismiss the Complaint for failure to allege fraud with sufficient particularity. Defendants also move pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss the Complaint for failure to state valid claims under Sections 10(b) and 20(a) of the Act, RICO, and state securities laws.[5] Because the allegations of fraud underlie most of the claims in the Complaint,[6] the court will address first the motion to dismiss for failure to comply with Rule 9(b).

1. *Sufficiency of the Pleadings Under Fed.R.Civ.P. 9(b)*

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circum-

---

**5.** Plaintiff asserts a separate claim against Prudential–Bache under the common law doctrine of *respondeat superior.* The court will address Prudential–Bache's liability under this doctrine in the context of each substantive claim.

**6.** The only claim that does not involve an element of fraud is conspiracy under RICO. *See Alfaro v. E.F. Hutton & Co.,* 606 F.Supp. 1100, 1117 (E.D.Pa.1985); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1233 at 181 (1969).

stances constituting fraud or mistake shall be stated with particularity." This strict rule of pleading has developed in tension with the liberal pleading requirements of Fed.R.Civ.P. 8.[7] *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 65 L.Ed.2d 1140 (1980). Rule 9(b) requires particularity in averments of fraud in part to apprise defendants of the claims against them and in part because of the potential harm to a defendant's good will and reputation resulting from the mere allegation of fraud. *See Ross,* 607 F.2d at 557. In securities litigation, the rule has been strictly construed in order to protect defendants from ungrounded suits that otherwise would fall within the general norm established in Rule 8. These "strike suits" carry a high settlement value; a defendant may be forced to settle an ungrounded claim simply to avoid the greater expense of extensive discovery. *See Billard v. Rockwell Int'l Corp.,* 683 F.2d 51, 57 (2d Cir.1982); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Ross,* 607 F.2d at 557.

■ In recognition of these concerns, courts have required claims brought under Section 10(b) of the Act and Rule 10b–5 to comply with the particularity requirement of Rule 9(b). *See Decker,* 681 F.2d at 114; *Ross,* 607 F.2d at 557. Similarly, the predicate act allegations of a RICO claim (in this case, mail fraud, wire fraud and securities fraud)[8] must also comply with Rule 9(b). *See Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *petition for cert. filed,* 55 U.S.L.W. 3322 (Oct. 13, 1987). Finally, claims brought under Section 20(a) of the Act and state securities laws, all of which contain an element of fraud, are also subject to the particularity requirements of Rule 9(b).

■ Despite the general element of fraud underlying plaintiff's claims, the particularity of fraud allegations must be determined in the context of each cause of action.[9] In this case, the court's inquiry begins with the allegations relating to Section 10(b). Allegations relating to the predicate acts of mail fraud and wire fraud under RICO will follow.[10] It will then be unnecessary to consider separately the claims under Section 20(a) of the Act because the elements of fraud under that provision do not differ materially from the elements of Section 10(b).[11] Similarly, a complaint that alleges fraud with sufficient particularity under Section 10(b) will also properly allege fraud under the state securities statutes, Conn.Gen.Stat. §§ 36–472, 36–498(a)(2).[12]

7. Rule 8 provides in relevant part:
A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim, shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ....

8. The plaintiff also asserts larceny as a predicate act underlying her RICO claims. However, larceny is not a predicate act within the definition of RICO, 18 U.S.C. § 1961(1).

9. For example, fraud alleged in the context of a Section 10(b) cause of action requires pleading with particularity specific elements different from those that are required of fraud alleged in the context of a RICO claim. *See infra* Pleading Section 10(b) and Pleading RICO Predicate Acts.

10. The determination of the particularity of the Section 10(b) claim will be applicable to the allegations concerning RICO predicate acts.

11. Section 20(a) of the Act establishes liability for any person who controls another person already liable for fraudulent conduct under Section 10(b). The pleading requirements of fraud under Section 20(a) are thus necessarily the same as under Section 10(b). *Cf. Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 961 (2d Cir.1987) (finding principles developed in context of Section 10(b) applicable to claims under the Williams Act).

12. Conn.Gen.Stat. §§ 36–472 and 36–498(a)(2) impose liability for any conduct in connection with the offer, sale or purchase of any security involving a scheme to defraud or misleading statements or omissions of material facts. The parties agree that the principles developed in the context of Section 10(b) are applicable to these state law claims. *See* Certified Official Transcript of Hearing of June 26, 1987 (filed August 3, 1987) ("Official Transcript") at 21; Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss Pursuant to Federal Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (filed March 6, 1987) at 23. *Cf. Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 60 n. 2 (2d Cir.1985)

(a) *Pleading Section 10(b)*. To satisfy Fed.R.Civ.P. 9(b), an allegation of fraud under Section 10(b) should state the time, place, speaker and, if possible, the content of the alleged misrepresentations. *See Luce*, 802 F.2d at 54. Allegations of fraud based on "information and belief" are allowed only for "matters peculiarly within the opposing party's knowledge." *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *see also Luce*, 802 F.2d at 54 n. 1. In such circumstances, the allegations must be accompanied by a statement of the facts upon which the belief is founded. *See Schlick*, 507 F.2d at 379. In addition, allegations of fraud under Section 10(b) must state acts indicating knowledge (or "scienter") on the part of defendants. *See Decker*, 681 F.2d at 115 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976)).

A review of the Section 10(b) claims brought against defendants Prudential–Bache and Condron leads to the conclusion that the claims satisfy the requirements of Fed.R.Civ.P. 9(b). Paragraph 15 of the Complaint, stated upon knowledge, describes the events leading up to plaintiff's investment, including the time, place, and substance of plaintiff's contact with Rose and Prudential–Bache. Paragraphs 11–14 set forth the nature of the alleged fraudulent scheme in detail, and discuss at length the false statements and material omissions of the Offering Memoranda. *See Luce*, 802 F.2d at 55 (finding that "[r]eference to the Offering Memorandum satisfies 9(b)'s requirements as to identification of the time, place, and content of the alleged misrepresentations") (citations omitted). Paragraph 11 of the Complaint, for example, specifically states that the Offering Memoranda falsely represented "that no compensation would be paid to Condron and his companies for selling limited partnership interests, and that no compensation would be paid to broker-dealers for placing and directing the sale of such interests."

Such a statement, representative of allegations in the Complaint, is certainly adequate to inform the defendants of the specific allegations against them. Paragraph 13 also details the way in which Condron and Rose allegedly intended to mismanage the limited partnerships through, *inter alia*, the commingling of funds, high risk trading, churning of accounts, violation of margin requirements, and receipt of illegal commissions and kickbacks. Finally, paragraphs 16 and 17 connect these allegations of fraud to defendants Prudential–Bache and Condron. *See Luce*, 802 F.2d at 54; *see also Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir.1984).

The court must also determine whether the Complaint alleges scienter on the part of defendants Prudential–Bache and Condron with the requisite particularity. Although fraud must be pleaded with particularity, Fed.R.Civ.P. 9(b) states that knowledge may be averred generally as long as the complaint contains a sufficient factual basis to support any such inference. *See Ross*, 607 F.2d at 558. As the court in *Ross* noted, "at this stage of the litigation, we cannot realistically expect plaintiffs to be able to plead defendants' actual knowledge." 607 F.2d at 558.

There can be no dispute that paragraphs 11–14 of the Complaint allege knowledge on the part of defendant Condron by identifying him as a central figure in the fraudulent scheme. As to Prudential–Bache, paragraphs 11, 13, 14, and 15 more than adequately allege that Rose, a registered Prudential–Bache representative, knowingly participated in the fraudulent activity from March 1982 to April 1983. Paragraph 16 of the Complaint further alleges that James H. Hosp, a Prudential–Bache vice president, had assigned Rose to work with Condron, and that Hosp "solicited the public to purchase interests" in the Partnerships. Similarly, Cheryl Coudert and Frank Romig, two Prudential–Bache employees, are alleged to have solicited inter-

(noting that the absence of specific arguments on Section 18 and state law claims indicates that "[t]he parties apparently agree that their discus- sion of section 10(b) applies equally to section 18 and to the New York state law claims").

ests in the Partnerships. *See* Complaint ¶¶ 16, 17. Paragraph 17 establishes a motive to defraud on the part of Prudential–Bache by alleging that these solicitations were made in return for an agreement that a substantial part of the Partnerships' trading would be channelled to Prudential–Bache. "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck,* 820 F.2d at 50. These allegations establishing motive and opportunity, taken together, are sufficient to give rise to an inference that employees of Prudential–Bache, acting within the scope of their employment, knowingly participated in the alleged fraudulent scheme. Such knowing participation on the part of its employees is sufficient to support an allegation of fraud by Prudential–Bache under Section 10(b).[13]

■ Finally, defendants Prudential–Bache and Condron assert that the Complaint fails to satisfy Fed.R.Civ.P. 9(b) as a matter of law because its allegations, based on information and belief, are not accompanied by a statement of the facts upon which the belief is founded. However, the Complaint, in paragraphs 4 and 15, states relevant facts "upon knowledge." In addition, plaintiff's counsel have submitted two affidavits setting forth the factual source for plaintiff's belief as the investigative efforts of the receiver of the bankrupt Partnerships and the record of a related case before Judge Ellen Bree Burns, *Weisman v. Oliver Rose Securities, Inc.,* Civil No. B–85–126 (EBB). *See* Affidavit of Mordecai Rosenfeld (filed Mar. 6, 1987); Affidavit of William B. Barnes (filed Mar. 6, 1987).

Defendants Prudential–Bache and Condron contend that, for the purposes of this motion to dismiss, the court is limited in its consideration to the Complaint. However, no such limitation governs motions under Fed.R.Civ.P. 9(b).[14] A rule that material outside the pleadings, such as affidavits of counsel, may not be considered on a motion to dismiss under Rule 9(b) makes little sense. The primary purposes of Fed.R.Civ. P. 9(b) are to apprise defendants of the claims against them and to deter "strike suits"; the fact that the basis of the claims is stated in an accompanying affidavit, rather than in the complaint itself, is of little or no consequence. *See Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979) (considering material set forth in affidavit accompanying complaint).[15] The court concludes that where the complaint contains detailed allegations of fraud based on information and belief, an accompanying affidavit setting forth the basis for that belief may be considered in determining whether the complaint satisfies the requirements of Fed.R.Civ.P. 9(b). *See Management Assistance Inc. v. Edelman,* 584 F.Supp. 1016, 1018 (S.D.N.Y.1984) (finding that "plaintiff's factual allegations, including the documents annexed to the amended complaint, establish a sufficient basis to support the allegations of the amended complaint made on information and belief").

In summary, the court finds that the Section 10(b) claims satisfy the requirements of Fed.R.Civ.P. 9(b). The Complaint contains sufficiently detailed allegations of fraud based on information and belief, accompanied by statements based upon knowledge and affidavits by plaintiff's counsel supporting the factual basis of the allegations. The Complaint also sufficiently alleges facts giving rise to knowing par-

13. Prudential–Bache's liability under Section 10(b) based upon the doctrine of *respondeat superior* is discussed below in connection with the sufficiency of plaintiff's Section 10(b) claims.

14. Matters outside the pleadings may also be referred to on motions pursuant to Rule 12(b). *See Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985); *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976), *cert.*

*denied sub nom Chemical Bank v. Arthur Andersen & Co.,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

15. At a hearing held on June 26, 1987, counsel for defendant Prudential–Bache conceded that the information contained in the affidavits, if included in the Complaint, would be a sufficient statement of the plaintiff's factual basis. *See* Official Transcript at 10–11.

ticipation on the part of defendants Condron and Prudential–Bache.

(b) *Pleading RICO Predicate Acts.* In order to bring a valid civil claim under RICO, the complaint must allege, *inter alia,* that the defendants committed two acts of "racketeering activity." 18 U.S.C. §§ 1961(1), 1961(5). The Complaint in this case alleges that all of the defendants engaged in the predicate acts of mail fraud, wire fraud, and securities fraud under Sections 10(b) and 20(a) of the Act, and under state securities law.

█ As already established, the Complaint alleges a Section 10(b) claim with sufficient particularity against defendants Prudential–Bache and Condron. Because a separate Section 10(b) claim is not brought against defendant King, however, the particularity of the Section 10(b) predicate act allegation with respect to him must be considered. Paragraph 25 of the Complaint sets forth in detail the date of King's alleged fraudulent statements, to whom these statements were given, and the substance of the statements. However, unlike the allegations as to Condron and Prudential–Bache, there are no facts alleged in the Complaint that link King to the creation of the scheme or that establish a motive and opportunity to defraud. Absent such allegations, the general and conclusory averments of scienter fail to satisfy the particularity requirement of Fed.R.Civ.P. 9(b). *See Beck,* 820 F.2d at 50; *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987).

Having concluded that the Complaint alleges the Section 10(b) predicate act with sufficient particularity as to defendants Prudential–Bache and Condron but not as to King, the court may now consider whether the Complaint also alleges the predicate acts of mail and wire fraud in conformity with Fed.R.Civ.P. 9(b). The elements of mail fraud, 18 U.S.C. § 1341 (1982), are participation in a scheme to defraud and knowing use of the mails to further that scheme. *See United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983). The elements of wire

fraud, 18 U.S.C. § 1343 (1982), include participation in a scheme to defraud and knowing use of interstate communications to further that scheme. *See United States v. Corey,* 566 F.2d 429, 430 n. 2 (2d Cir.1977).

█ With respect to mail fraud, the Complaint alleges on information and belief that the "defendants or some of them" mailed false Offering Memoranda, false financial reports, and false transaction reports to investors in the Partnerships. The Complaint is vague, however, with respect to the financial and transaction reports. For example, although plaintiff alleges on information and belief that such reports were sent to all investors, she never states on her own knowledge that she ever received them. She also fails to allege the timing of these reports and their content. *See* Complaint ¶¶ 23, 25, 32. Although the Complaint does not contain sufficient allegations of mail fraud in connection with the financial and transaction reports, it does set forth the time and place of the mailing of Offering Memoranda. *See* Complaint ¶¶ 15, 20, 21, 32. Accordingly, plaintiff's allegations of mail fraud based on the Offering Memoranda meet the specificity requirement of Fed.R.Civ.P. 9(b).

█ The mail fraud statute also requires a showing of scienter. *See Beck,* 820 F.2d at 49. As noted earlier, Fed.R.Civ.P. 9(b) allows a general averment of knowledge if that averment is accompanied by a factual statement of the basis for this assertion. *See id.* at 50. For the reasons stated above regarding Section 10(b), the court finds that the Complaint establishes motive and opportunity on the part of defendants Prudential–Bache and Condron giving rise to a factual basis for inferring scienter. *See id.* Accordingly, the allegations that defendants Prudential–Bache and Condron violated the mail fraud statute meet the requirements of Rule 9(b). *See First Federal Savings and Loan Ass'n v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 444 (S.D.N.Y.1986). The court also finds, as noted above, that the Complaint fails adequately to plead scienter on the part of defendant King, and thus

the allegations of mail fraud against him must be dismissed.

 Plaintiff fails to allege wire fraud against any of the three defendants with sufficient particularity. The Complaint contains three references to the use of wire communications: two telephone calls between plaintiff and Rose in paragraph 15, and telephone calls made to the Partnerships in paragraph 16. The allegation of telephone calls in paragraph 16 is insufficient because it fails to identify who placed these calls, when and to whom they were made, or their content. The two telephone calls between plaintiff and Rose, although identified specifically as to time, place, speaker and content, nonetheless fail to state a valid claim under the federal wire fraud statute because the calls were apparently made *intrastate. See United States v. DeBiasi,* 712 F.2d 785, 791 (2d Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *Utz v. Correa,* 631 F.Supp. 592, 596 (S.D.N.Y.1986). Because the Complaint fails to allege wire fraud with particularity in paragraph 15 and fails to state a claim under the wire fraud statute in paragraph 16, plaintiff will be barred from pleading wire fraud as a predicate act in connection with her RICO claims.

In sum, the court concludes that the Complaint pleads with particularity the claims under Section 10(b) of the Act against defendants Prudential–Bache and Condron. Consequently, the court holds that the Complaint also pleads fraud under Section 20(a) of the Act and Connecticut state securities laws with the requisite particularity as to these two defendants. The court further finds that the Complaint adequately pleads the RICO predicate acts involving violations of Section 10(b) of the Act and mail fraud as to defendants Prudential–Bache and Condron. With respect to defendant King, however, the motion to dismiss the RICO predicate act allegations under Section 10(b), Section 20(a) and state securities law claims is granted for failure to plead fraud with sufficient particularity.

**16.** As noted above, *see* note 12 and accompanying text, the court need not engage in a separate

The court turns now to the motions to dismiss under Rule 12(b)(6).

*2. Sufficiency of the Pleadings under Fed.R.Civ.P. 12(b)(6)*

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the complaint will be construed "with great generosity." *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985). In other words, the motion will be considered in a light favorable to the plaintiff, with all well-pleaded allegations in the complaint being taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *see George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977).

The court will address in turn the sufficiency of the claims brought pursuant to Sections 10(b) and 20(a) of the Act, and RICO.[16]

 (a) *Section 10(b) Claims.* Plaintiff brings claims under Section 10(b) and Rule 10b–5 against defendants Prudential–Bache and Condron. To state a valid claim under Section 10(b) and Rule 10b–5, "a complaint must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *Luce,* 802 F.2d at 55 (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed. 2d 668 (1976)). The complaint must also allege that the plaintiff's reliance on defendant's actions caused the injury. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985); *Ross,* 607 F.2d at 553. To establish detrimental reliance, a plaintiff must show " 'both *loss causation*—that the misrepresentations or omissions caused the economic harm—and *transaction causation*—that

consideration of claims brought pursuant to state securities law.

the violations in question caused the [plaintiff] to engage in the transaction in question.' " *Bennett v. United States Trust Co.*, 770 F.2d 308, 313 (2d Cir.1985) (quoting *Schlick*, 507 F.2d at 380), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) (emphasis originally in *Schlick*).

█ Prudential–Bache's attack on the Section 10(b) claim is directed primarily to this element of detrimental reliance. With respect to loss causation, Prudential–Bache contends that plaintiff has failed to allege that the actions of Prudential–Bache caused her injury. In its view, the only "acts" attributable to Prudential–Bache are the alleged receipt of excessively high commissions. The court disagrees. To the extent that Prudential–Bache may be held liable under Section 10(b) for the acts of its employees based upon the doctrine of *respondeat superior*, the Complaint may fairly be held to allege that Prudential–Bache, through the acts of its employees, "caused" plaintiff's injury.[17]

The liability of a broker-dealer for the acts of its employees was addressed by the Court of Appeals in *Marbury Management, Inc. v. Kohn*, 629 F.2d 705 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). In *Marbury*, the Court of Appeals stated that "the concern is simply with scope or course of employment and whether the acts of the employee ... can fairly be considered to be within the scope of his employment." *Id.* at 716. The Complaint here, like the complaint in *Marbury*, alleges facts showing that Rose did not deviate from his usual services as a Prudential–Bache representative when he arranged plaintiff's investment in Arrow Associates. Similarly, the Complaint alleges facts showing that Hosp, a Prudential–Bache vice president, together with Coudert and Romig, solicited investments in the Partnerships. These solicitations are also conduct that fall within the scope of their employment with Prudential–Bache. On the basis of Prudential–Bache's liability for the actions of these employees under the doctrine of *respondeat superior*, therefore, loss causation has been adequately pled.

█ In addition, a plaintiff is required to show "transaction causation"—that is, he "must demonstrate that he relied on the misrepresentations in question when he entered into the transaction which caused him harm." *Schlick*, 507 F.2d at 380. As long as the misrepresentations are material, transaction causation may be presumed. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Ross*, 607 F.2d at 553; *Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F.Supp. 485, 495 (S.D. N.Y.1984).[18] Whether misrepresentations are "material" turns on whether "a reasonable investor might have considered them important in the making of this [investment] decision." *Affiliated Ute Citizens*, 406 U.S. at 153–54, 92 S.Ct. at 1472; *see also Schlick*, 507 F.2d at 381. In this case, plaintiff has alleged that the Offering Memorandum and Prudential–Bache's relation to the Partnerships induced her to invest in Arrow Associates. *See* Complaint ¶ 15. These allegations are sufficient to meet the materiality requirement.[19]

---

17. Defendant Prudential–Bache also contends that the Complaint fails to allege scienter on the part of Prudential–Bache. Scienter for the purpose of a Section 10(b) claim is defined as "intent to deceive, manipulate, or defraud." *Ernst & Ernst*, 425 U.S. at 193, 96 S.Ct. at 1381. Insofar as the court finds Prudential–Bache may be liable under the doctrine of *respondeat superior* for the intentional acts of its employees in violation of Section 10(b), then the Complaint adequately alleges scienter with respect to Prudential–Bache.

18. Prudential–Bache relies upon *Bloor* for the proposition that " 'the injury averred must proceed directly from the wrong alleged and must not be attributable to some supervening cause.' " 754 F.2d at 62 (quoting *Marbury Management,* 629 F.2d at 717 (Meskill, J., dissenting)). However, Prudential–Bache fails to identify any supervening cause, and the court is at a loss to discover one in the Complaint. To the contrary, the acts of Hosp, Rose, Coudert and Romig are attributable to Prudential–Bache under Section 10(b), and as such were the primary and direct cause of the alleged injury. *See* Complaint ¶¶ 11, 12, 15(j).

19. In *Luce*, the Court of Appeals noted that a complaint states a claim under Rule 12(b)(6) if "those representations involved specific promises by the [defendants] to perform particular

The court therefore holds that the Complaint sets forth a claim upon which relief can be granted against defendant Prudential–Bache under Section 10(b) and Rule 10b–5. For substantially the same reasons, the court also holds that the Complaint states a claim under Section 10(b) and Rule 10b–5 against defendant Condron.[20] Accordingly, the Prudential–Bache and Condron motions to dismiss the claims brought pursuant to Section 10(b) and Rule 10b–5 are denied, and it follows that their motions to dismiss the state law claims must also be denied.

■■ (b) *Section 20(a) Claim.* Plaintiff asserts a claim against Prudential–Bache under Section 20(a) of the Act, which imposes liability on any person who "controls" another who violates any other provision of the Act. To establish liability under this section, the plaintiff must show (1) a primary violation, (2) scienter on the part of the defendant, and (3) control of the primary violator by the defendant. *Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499, 506 (S.D.N.Y.1985).

■■ That the plaintiff has alleged facts sufficient to state both a violation of

Section 10(b) and scienter on the part of Prudential–Bache has been established. Moreover, as the employer of Rose, Hosp, Coudert and Romig, Prudential–Bache was in a position to exercise control over conduct within the scope of their employment. *See Federal Savings and Loan Ins. Corp. v. Shearson–American Express, Inc.,* 658 F.Supp. 1331, 1344 (D.P.R.1987).[21] In any event, liability under Section 20(a) of the Act may also be established pursuant to the doctrine of *respondeat superior. See Marbury Management,* 629 F.2d at 712. As noted above concerning Section 10(b) of the Act, the allegations in the Complaint are sufficient to establish vicarious liability on the part of Prudential–Bache. Accordingly, Prudential–Bache's motion to dismiss the Section 20(a) claim is denied.[22]

(c) *RICO Claims.* The Complaint includes claims against all three defendants alleging "racketeering activity" under 18 U.S.C. § 1962(c) and conspiracy under 18 U.S.C. § 1962(d). Section 1962(c) makes it unlawful for any person to conduct or participate in an enterprise through a pattern of "racketeering activity." *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479,

acts that they did not intend to carry out or knew could not be carried out." 802 F.2d at 55–56. The Complaint certainly alleges sufficient facts concerning the misrepresentations contained in the Offering Memoranda. *See* Complaint ¶ 11. In addition, a complaint that alleges "churning" states a cause of action under Section 10(b) and Rule 10b–5. *See Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Jaksich,* 582 F.Supp. at 495–96.

20. Condron's Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint (filed March 12, 1987) simply realleges and readopts the arguments set forth in his Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Complaint (filed Oct. 7, 1986). The earlier memorandum based its objection to the Section 10(b) claim on plaintiff's failure to allege a particular purchase or sale of a security. However, this omission was corrected in plaintiff's amended complaint, *see* Complaint ¶ 15, and thus that objection by Condron no longer has merit. Further, to the extent Condron bases his motion on the arguments in Prudential–Bache's memorandum of law, Condron's motion must be denied for the same reasons Prudential–Bache's motion is denied.

21. Some courts have construed Section 20(a) as "requiring a showing that the controlling person ... knowingly used the controlled person to commit the illegal act." *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1362 (S.D.N.Y.), *aff'd,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see Rush,* 628 F.Supp. at 1196 n. 4. However, because liability under Section 20(a) may also be based upon the doctrine of *respondeat superior, see Marbury Management,* 629 F.2d at 712, the court need not at this time address the issue whether intentional control is a necessary element of liability under that section.

22. Prudential–Bache has also argued with respect to Sections 10(b) and 20(a) of the Act and RICO that plaintiff has failed to allege any damages resulting from the alleged conduct of its employees. Prudential–Bache contends that Rose left his employment with defendant in April 1983, and that any damages suffered by plaintiff occurred after that date. Determination of this issue of damages is properly deferred until trial.

105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Section 1962(d) makes it unlawful for any person to conspire to engage in such conduct. In *Moss v. Morgan Stanley Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), our Court of Appeals articulated seven elements that a plaintiff must plead to state a claim under Section 1962(c), namely:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly ... participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Id.* at 17; *see also Beck,* 820 F.2d at 49. Defendants have moved to dismiss the Section 1962(c) claims for failure to allege adequately the requisite "pattern" and "enterprise" elements. Defendants also move to dismiss the Section 1962(d) conspiracy claims for failure to allege adequately the requisite agreement element. *See United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.) (holding that RICO conspiracy requires showing "that defendant himself at least agreed to commit two or more predicate crimes"), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

■ As a preliminary matter, the conclusions reached above with respect to the inadequate pleading of predicate acts against defendant King under Fed.R.Civ.P. 9(b) mandate dismissal of the RICO claims against him. Because plaintiff has failed to allege adequately mail fraud, wire fraud or securities fraud by King, the two predicate acts necessary to sustain a Section 1962(c) claim have not been pled. Similarly, a finding that plaintiff has failed to plead two predicate acts is also fatal to plaintiff's conspiracy claim against King under Section 1962(d). In the absence of any allegations that King agreed to commit the predicate acts, the RICO conspiracy claim against him must be dismissed. *See Ruggiero,* 726 F.2d at 921; *see also United States v. Teitler,* 802 F.2d 606, 612–13 (2d Cir.1986). Accordingly, King's motion to dismiss the Sections 1962(c) and (d) claims is granted.

The court turns now to the sufficiency of the Section 1962(c) claims asserted against defendants Prudential–Bache and Condron.

*"Pattern of Racketeering Activity."* The RICO statute, 18 U.S.C. § 1961(5), defines "pattern of racketeering activity" as requiring at least two of the predicate criminal acts listed in 18 U.S.C. § 1961(1). The Supreme Court cast some light on this ambiguous concept in note 14 of its decision in *Sedima,* 105 S.Ct. at 3285. The Court remarked that, although the statute requires proof of the commission of two predicate criminal acts, two such acts alone may not be sufficient to establish a "pattern." Quoting from the legislative history of this extraordinary statute, the Court implied that a showing of *"continuity plus relationship"* is necessary to establish a RICO "pattern." *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969) (emphasis added in *Sedima* )).[23]

In the wake of *Sedima,* courts have struggled to articulate a meaningful understanding of the Court's suggestion of a twin requirement of continuity and relatedness. Our Court of Appeals swiftly resolved this issue in the year following *Sedima* by holding that the elements of relatedness and continuity are supplied by the concept of "enterprise." *United States v. Ianniello,* 808 F.2d 184, 190 (2d Cir.1986),

---

**23.** Note 14 reads in relevant part:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep.No. 91–617, p. 158 (1969) (emphasis added).

105 S.Ct. at 3285 n. 14.

*cert. denied*, — U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). In *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987), *petition for cert. filed*, 55 U.S.L.W. 3322 (Oct. 13, 1987), the Court of Appeals reaffirmed this holding by noting that "our Circuit has given effect to the factor of 'continuity plus relationship' discussed in *Sedima* through our interpretation of the 'enterprise' element of RICO." *Id.* at 51. Under this interpretation, therefore, it is the concept of "enterprise" that embraces *Sedima*'s suggestion of "continuity plus relationship"; the concept of "pattern" remains satisfied by a showing of "two related predicate acts." *Id.*[24]

■ In the instant case, there are at least four predicate acts alleged with sufficient particularity against Prudential–Bache and Condron: violations of Sections 10(b) and 20(a) of the Act, mail fraud and state securities fraud. The number of predicate acts alleged against defendants Prudential–Bache and Condron therefore meets the statutory minimum to establish a "pattern." Although two predicate acts are sufficient to establish a "pattern," defendant Prudential–Bache nevertheless seeks dismissal of the RICO claims because they are based upon the doctrine of *respondeat superior*. The essence of Prudential–Bache's argument is that vicarious liability is precluded under RICO.

A number of courts have addressed the question of vicarious liability under RICO, but many of these cases are of limited precedential value here. In these cases, the resolution of the issue of vicarious liability was intimately bound up with the holding that, as a matter of statutory interpretation under RICO, a corporation may not be named as both a defendant "party" and as the RICO "enterprise." *See Schofield v. First Commodity Corp.*, 793 F.2d 28, 30 (1st Cir.1986); *Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1194 (S.D.N.Y. 1985); *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982). The rationale for this holding derives from the plain language of Section 1962(c), which requires a liable "person" to be "employed by or associated with any enterprise." These courts have held that the use of the terms "employed by" and "associated with" requires that the "person" be distinct from the RICO "enterprise." *See, e.g., Bennett*, 770 F.2d at 315. Concluding that it would be "inappropriate to use *respondeat superior* liability to accomplish indirectly what the statute directly denied," *Schofield*, 793 F.2d at 33, the Court of Appeals for the First Circuit rejected a plaintiff's attempt to transform vicariously the RICO "enterprise" into the defendant "party."[25] In the present case, however, Prudential–Bache, although named as a defendant "party," is not named as the RICO "enterprise."[26] Plaintiff's theory of vicarious liability therefore does not implicate the same statutory concerns as those at issue in the cases cited above, and the reasoning of those courts is not directly applicable here.

In these circumstances, the question for the court is whether a corporation which is named as a defendant "party" but not as the "enterprise" may be held vicariously

---

24. Although locating the elements of relatedness and continuity within the concept of "enterprise," the Court of Appeals in *Beck* nevertheless retained some element of relatedness in its definition of "pattern." This confusion inevitably results from the formalistic inquiry developed by the courts under RICO. *Cf. Beck*, 820 F.2d at 51 (noting that "whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance"). This court will not attempt the metaphysical exercise of distinguishing the relatedness of "pattern" from that of "enterprise." Rather, the court will simply address the "relatedness" of the predicate acts in this case in its discussion of the RICO "enterprise."

25. Although the Court of Appeals in *Schofield* did not address the general issue of vicarious liability under RICO, it did emphasize that "we wholeheartedly agree that corporations should not escape liability when their policies foster the racketeering activity that is at the heart of RICO's prohibitions." *Id.* This court agrees that employers should be liable for "policies" in violation of the provisions of RICO. In the present case, however, there are no allegations that Prudential–Bache developed "policies" that fostered the alleged scheme.

26. The "enterprise" in this case is asserted to consist of Prudential–Bache, Condron and King. *See* Complaint ¶ 27.

liable under Section 1962(c) for the intentional acts of its employees.[27] Because the language and legislative history of the statute are silent on the issue of vicarious liability, reference to the legislative policy underlying the statute is an appropriate starting point. *See Petro–Tech, Inc. v. Western Co.*, 824 F.2d 1349, 1356 (3d Cir. 1987) (noting that "the applicability of common law doctrines in litigation under federal statutes depends on whether those principles advance the goals of the particular federal statute").

The federal policy underlying RICO is "to cope with the infiltration of legitimate businesses [by organized crime]." *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). In considering the subject of vicarious liability, some courts have found it useful to distinguish between "aggressor" corporations (corporations that are central figures in the unlawful scheme) and "conduit" corporations (corporations that unknowingly facilitate the illegal behavior).[28] *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 835 (D.C.Ill.1985); *Dakis*, 574 F.Supp. at 759; *see also* Blakey, The RICO Civil Fraud Action in Context: Reflections on *Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 323 (1982) (*"Civil RICO "*); Note, Judicial Efforts to Redirect an Errant Statute: Civil RICO and the Misapplication of Vicarious Corporate Liability, 65 B.U.L.Rev. 561, 603 (1985) (*"Judi-*

*cial Efforts "*) . Under the common law doctrine of *respondeat superior,* both "aggressor" and "conduit" corporations would be liable for the acts of their employees committed within the scope of their employment. *See* W. Prosser, Law of Torts § 70 (1971); *Civil RICO, supra,* at 290 n. 151. Some courts have recognized, however, a difference between "aggressor" and "conduit" corporations for the distinct purposes of the RICO statute, and have thus declined to subject the latter to vicarious liability. *See Inryco*, 615 F.Supp. at 835; *Dakis*, 574 F.Supp. at 760.[29]

The policy reasons for not subjecting these "conduit" businesses to *respondeat superior* liability has been stated on several occasions. As the district court in *Dakis* noted, "it would be an anomalous result indeed if, because [the employee] had misused his authority to trade accounts, and had actually violated internal guidelines of the firms by so doing, the firms were nonetheless deemed 'aggressor' enterprises liable under RICO." 574 F.Supp. at 760. The Court of Appeals for the Seventh Circuit noted that "it would make little sense to hold a corporation liable under RICO for the misconduct of lower level employees, at least where it appears that the corporation is a passive instrument or even a victim of the racketeering activity." *Haroco v. American Nat'l Bank and Trust Co.*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

---

**27.** Some courts that have addressed the issue of vicarious liability under RICO have distinguished between liability under Sections 1962(a) and 1962(c). *See, e.g., Haroco v. American Nat'l Bank and Trust Co.*, 747 F.2d 384, 401 n. 18 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

**28.** A "conduit" corporation may also suffer injuries as a result of the racketeering activity, in which case the corporation would also be considered an "infiltrated" corporation. As an "infiltrated" business, the corporation might itself have a claim under RICO against those parties who engaged in the racketeering activity. *See, e.g., Dakis v. Chapman*, 574 F.Supp. 757, 760 (N.D.Cal.1983).

**29.** The Court of Appeals for the Third Circuit recently held that corporations are vicariously liable under Section 1962(c) *except where* the corporation is also the named "enterprise." *Petro–Tech*, 824 F.2d at 1358. To this extent, the Court of Appeals for the Third Circuit is in

agreement with the Court of Appeals for the First Circuit, *see Schofield*, 793 F.2d at 33, and the Court of Appeals for the Ninth Circuit, *see Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir.1986).

However, the reasoning of these courts differs. The First Circuit, for example, based its rejection of vicarious liability for corporate "enterprises" on its holding that a defendant "party" may not also be named as the "enterprise." *See Schofield*, 793 F.2d at 33. The Third Circuit rejected vicarious liability under Section 1962(c) because it "would make the enterprise liable for the RICO violations which victimized it." *Petro–Tech*, 824 F.2d at 1359 (citation omitted). The conclusion of the Third Circuit that only "enterprise" corporations are "victims" of the racketeering activity is unpersuasive for, as the present case demonstrates, corporations that are not named as the "enterprise" may nonetheless be "infiltrated" by assertedly criminal elements.

Similarly, the District Court for the Northern District of Illinois declined to adopt the "anomalous" rule whereby "malefactors at a low corporate level could thrust treble damage liability on a wholly unwitting corporate management and shareholders." *Parnes*, 548 F.Supp. at 24 n. 9; *see also Civil RICO, supra*, at 323. Moreover, insofar as vicarious liability is justified as creating a corporate incentive to regulate the unlawful behavior of employees, such an incentive already exists in the form of federal and state securities laws. Indeed, at least one commentator has noted that "conduit" businesses are already vicariously liable for the "predicate acts" of their employees. *See Judicial Efforts, supra*, at 605. In these circumstances, "invoking RICO's punitive, financially ruinous treble damage remedy" could conceivably interfere with the very market forces that RICO was designed to protect. *Id.* at 605.

■■■ In these circumstances, the court concludes that a corporation may be found vicariously liable under Section 1962(c) only where the corporation may fairly be said to be a "central figure" (or "aggressor") in the alleged scheme. *Cf. Haroco*, 747 F.2d at 401.[30] What constitutes a "central figure" will vary with the factual circumstances of each case. In order to establish corporate liability under Section 1962(c), however, it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high corporate level has been determined, the court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the rack-

eteering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity. The ultimate determination whether the corporation is properly a RICO defendant must therefore be made in light of its role in the allegedly wrongful scheme, as illuminated by a careful weighing of these factors in the circumstances of the particular case.

■■■ In the instant case, the Complaint does not allege facts establishing Prudential–Bache as a "central figure" in the Partnership scheme. To the contrary, none of the Prudential–Bache employees, with the exception of Hosp, occupied a position of arguably high rank or authority within the corporate hierarchy.[31] With respect to Hosp, a Prudential–Bache vice president, the Complaint does allege that he knew of the alleged scheme, although not that he participated in its creation or continuing management. Rather, the Complaint alleges that Hosp only indirectly participated in the affairs of the enterprise by helping to solicit investors in the Partnerships. Hosp is not alleged to have committed any of the predicate acts, nor is he named as a defendant "party." Indeed, plaintiff's allegations indicate that Prudential–Bache's name and prestige simply facilitated the illegal activity promoted by Rose, a low-level representative, and Condron, a Prudential–Bache client. The Complaint does allege that Prudential–Bache benefitted from the receipt of illegal commissions. However, the fact that a corporation benefits from an illegal scheme does not in itself establish that the corporation participated as a "central figure" in that scheme. The court therefore concludes that the alleged receipt of illegal

30. In cases where courts have held that corporations may be vicariously liable under Section 1962(c), the factual circumstances have indicated that the corporations could well be characterized as "aggressor" corporations. *See, e.g., Federal Savings*, 658 F.Supp. at 1342 ("It is specifically alleged that Shearson employees and Shearson PR high corporate officers, caused Home Federal to carry out wire transfers, receive fraudulent account statements and financial information, accept brokered funds, make loans, accept deposits and enter into investments."); *Bernstein v. I.D.T. Corp.*, 582 F.Supp. 1079, 1083 (D.Del.1984) (involving alleged rack-

eteering activity by leading officers and directors of the corporation). *But see Schofield*, 793 F.2d at 32 n. 3.

31. Although the rank of vice president in most circumstances signifies a high degree of authority, the actual authority exercised by vice presidents at brokerage houses like Prudential–Bache is significantly less than their title would suggest. *See* Official Transcript at 19 ("And as you know, these brokerage firms do have many, many officers.") (comment by counsel for Prudential–Bache).

commissions is not sufficient to render Prudential–Bache a "central figure" in the alleged scheme.

In the absence of allegations establishing Prudential–Bache as a central figure in the alleged racketeering activity, *respondeat superior* liability will not lie. Plaintiff has therefore failed to allege the requisite "pattern" element of a claim under Sections 1962(c) with respect to Prudential–Bache. However, because the plaintiff has successfully alleged the predicate acts of mail fraud and securities fraud against defendant Condron, the pattern requirement of civil RICO has been met with respect to him. *See Albany Insurance Co. v. Harry Esses*, 831 F.2d 41, 43–44 (2d Cir.1987); *First Federal*, 629 F.Supp. at 445. Accordingly, Prudential–Bache's motion to dismiss the Sections 1962(c) and (d) [32] claims is granted, and Condron's motion to dismiss the Sections 1962(c) and (d) claims is denied.

*"Enterprise."* Plaintiff must also establish the existence of a RICO "enterprise." Two "persons"—a person is defined in Section 1961(3) as any individual or entity—may constitute an "enterprise." *See Bennett*, 770 F.2d at 315; *First Federal*, 629 F.Supp. at 446. The alleged "enterprise" in this case consists of Prudential–Bache, Condron and King. *See* Complaint ¶ 27. An "enterprise" comprised of Prudential–Bache, Condron and King thus satisfies this threshold numerical requirement.

■ As noted earlier, our Court of Appeals has interpreted the meaning of "enterprise" under RICO to embrace the factors of continuity and relatedness. In *Ianniello*, the Court of Appeals began with the concept of "enterprise" developed in recent Supreme Court opinions:

> An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

808 F.2d at 191 (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)). To accommodate the elements of continuity and relatedness, the law of this Circuit requires that something more than association must be shown. The existence of an "enterprise" requires proof that (1) the predicate acts were related to (2) the common purpose of (3) a continuing operation. *See id.; see also Albany Insurance*, 831 F.2d at 44; *Beck*, 820 F.2d at 51. A continuing operation is one which has no obvious terminating goal or date. *Beck*, 820 F.2d at 51; *Ianniello*, 808 F.2d at 192.

■ The plaintiff here has alleged that the predicate acts of mail and securities fraud committed by defendant Condron were related to the overall common purpose of fraudulently soliciting and maintaining public investments in the Partnerships. *See Ianniello*, 808 F.2d at 191. Similarly, the continuing nature of the fraud is inherent in the continuing nature of the Partnerships. *Cf. Beck*, 820 F.2d at 51 (holding that an association is not sufficiently "continuing" where the enterprise had "but one straightforward, short-lived goal" upon the attainment of which the enterprise ceased functioning); *Albany Insurance*, 831 F.2d at 44 (same). Inasmuch

---

**32.** Defendants' objections to the RICO conspiracy claim are derivative of their Section 1962(c) arguments. They contend that plaintiff has not sufficiently alleged an agreement by defendants to commit the predicate acts. *See* Memorandum of Law in Support of the Motion of Defendant Prudential–Bache Securities, Inc. to Dismiss Plaintiff's Complaint (filed Sept. 10, 1986) at 19–20; Memorandum of Law in Support of the Motion of Defendant James L. Condron to Dismiss Plaintiff's Complaint (filed Oct. 7, 1986) at 16–18. Because the court finds sufficient allegations to support a claim that defendants committed these acts, however, this objection is without merit. Further, even had defendants objected to the conspiracy claim on the basis that plaintiff had not alleged that defendants conspired to further knowingly the affairs of the enterprise as required under Section 1962(c), *see Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 792 n. 8 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), the court nevertheless finds plaintiff has also sufficiently pled this element of the conspiracy claim. However, the court's holding with respect to liability on the basis of *respondeat superior* under Section 1962(c) applies with equal validity to conspiracy to violate that section under 1962(d). The Section 1962(d) claim against Prudential–Bache must therefore be dismissed.

as the purpose to defraud investors underlying the Partnership scheme was neither "straightforward" nor "short-lived," the court concludes that the Complaint sufficiently alleges the "enterprise" component of Section 1962(c).

Accordingly, because plaintiff has sufficiently alleged the pattern and enterprise elements under Sections 1962(c) and (d), the motion to dismiss by defendant Condron is denied.

### 3. Class Action Certification

 Plaintiff has filed a motion for class action certification pursuant to Fed.R. Civ.P. 23(b)(3) for a class consisting of all investors in the Partnerships. To succeed on this motion, plaintiff must prove, *inter alia*, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R. Civ.P. 23(a)(3). In *General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court reaffirmed that " 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.' " *Id.* at 156, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed. 2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974))).

The court is persuaded that plaintiff has not satisfied this "typicality" requirement because her claims are not typical of potential claims by investors who purchased their interests in the Partnerships through Prudential–Bache. *See* Defendant Prudential–Bache's Memorandum in Opposition to Plaintiff's Motion for Class Action Certification (filed Oct. 21, 1986) at 12. Plaintiff was never a customer of Prudential–Bache, nor did she enter into any contractual relationship with Prudential–Bache. Rather, her claims against Prudential–Bache are based upon the relationship between Prudential–Bache and Arrow Associates. *See*

`Background, supra.` Those investors who were customers of Prudential–Bache or who entered into some contractual relationship with the firm may be able to assert additional or stronger claims based upon their own unique relationships with the firm. Without intimating a view on whether any investor in the Partnerships would be an adequate class representative in these circumstances, the court notes that class certification is often denied where investors had individualized relationships with the defendant broker-dealer. *See, e.g., Seiler v. E.F. Hutton & Co., Inc.*, 102 F.R.D. 880, 889 (D.N.J.1984) ("In situations ... where it is alleged that a brokerage firm or other investment counseling organization has defrauded a group of investors, the courts have generally denied class certification because of the highly individualized nature of the communications of the defendant's employees with their clients."); *In Re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491, 501–05 (S.D.N.Y. 1976); *see also* 3B Moore's Federal Practice ¶ 23.06-2 at 23–178; 7A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 1764 at 259–60.

Because plaintiff's claims cannot be considered "typical" of claims that might be brought by other investors, the court need not address whether the requisite elements of numerosity, commonality, and adequacy of representation under Rule 23(a) have been satisfied.[33] Accordingly, plaintiff's motion for class certification is denied.

### CONCLUSION

For the reasons stated above, the court holds that:

(1) King's motion to dismiss is granted as to all the claims asserted against him;

(2) Prudential–Bache's motion to dismiss the RICO claims, 18 U.S.C. §§ 1962(c) and (d), is granted;

(3) Prudential–Bache's motion to dismiss claims brought under Sections 10(b) and 20(a) of the Act and under state securities laws is denied;

**33.** To succeed on this motion, plaintiff also carries the burden of proving that the requirements of Fed.R.Civ.P. 23(b) have been met. However, because the court concludes that the plaintiff has failed to meet the requirements of Rule 23(a), the court need not address these additional requirements.

(4) Condron's motion to dismiss is denied as to all the claims asserted against him;

(5) Plaintiff's motion for class action certification is denied;

(6) King's motion for costs under Rule 11 is denied.[34]

Having previously granted plaintiff leave to amend her complaint, and having previously reminded her counsel of applicable pleading requirements, the court may exercise its discretion to dismiss with prejudice such of plaintiff's claims as are dismissed herein. *Luce,* 802 F.2d at 56; *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978). Accordingly, plaintiff is not granted leave to amend the Complaint.

It is so ordered.

---

**34.** The court concludes that plaintiff's claims against King were neither frivolous nor made without sufficient inquiry so as to justify the imposition of sanctions under Rule 11. *See* 5 C. Wright and A. Miller, Federal Practice and Procedure § 1333 (1987 Supp.); *see also Fustok v. Conticommodity Services, Inc.,* 618 F.Supp. 1069, 1076 (S.D.N.Y.1985) ("In view of the complexities of the RICO statute (the interpretation of which is still evolving through the courts) and particularly where, as here, courts have come to different conclusions in answering the legal questions raised by the defendants' motions, the defendants' motions cannot be regarded as frivolous and Fed.R.Civ.P. 11 has not been violated.").