**WAIT RADIO, an Illinois general partnership, by its partners Maurice RO-SENFIELD and Eugene Byrd, as Co-Trustees, Howard A. Weiss, as Trustee, Robert G. Weiss, Carl Devoe, Milton I. Shadur and Robert Plotkin, Plaintiffs,**

v.

**PRICE WATERHOUSE, Defendant.**

**No. 87 C 7610.**

United States District Court, N.D. Illinois, E.D.

June 17, 1988.

Michael L. Shakeman, Stephen J. Bisgeler, Neil H. Adelman, Barry A. Miller, Miller, Shakman, Nathan & Hamilton, James Stamos, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiffs.

Francis J. Higgins, D. Daniel Barr, John W. Rotunno, Kenneth E. Rechtoris, Stephen J. O'Neil, Bell, Boyd & Lloyd, Chicago, Ill., for defendant.

MEMORANDUM AND ORDER

GRANT, Senior District Judge, sitting by designation.

Pending before this court is the motion of defendant Price Waterhouse to dismiss the complaint of plaintiffs WAIT RADIO, et al. pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), common law fraud, breach of fiduciary duty, professional negligence and negligent misrepresentation. Price Waterhouse moves to dismiss the RICO claim for failure to state a claim under 18 U.S.C. sections 1962(a) and (c), and to dismiss the remaining state law claims for lack of subject matter jurisdiction. For the reasons stated below, the court grants defendant's motion to dismiss.

## I

### Facts

In 1978, plaintiffs, WAIT Radio and its partners ("WAIT"), which own WAIT–AM Radio, and Century Broadcasting Corporation ("CBC"), which owns WLOO–FM Radio, formed a partnership known as Century Chicago Broadcasting, Ltd. ("the Partnership"). The two groups agreed to operate the stations together through the Partnership; CBC is the sole general partner, owning a 77% interest in the Partnership, and WAIT is the limited partner, owning the remaining 23% interest. The Partnership Agreement established the rights and obligations of those parties. Pursuant to that Agreement, which was appended to and incorporated into the complaint, CBC selected defendant Price Waterhouse as its independent auditor to audit its financial statements which were to be prepared by the General Partner in accordance with generally accepted accounting principles. Under the Agreement, it is the responsibility of the General Partner to supply to the Limited Partner within a specified time period "a letter from the independent auditor ... expressing the opinion that the methods used by the General Partner to allocate expenses to the Partnership for such year are reasonable and in accordance with the requirements of this agreement."

In 1985 WAIT sued CBC, alleging that CBC had continuously misappropriated assets of the Partnership since its inception by diverting Partnership funds to CBC and away from WAIT. After two years of discovery in the CBC lawsuit, WAIT concluded that Price Waterhouse, CBC's accountant, was also liable to the plaintiff for its role in the CBC scheme. Thus WAIT filed this suit against Price Waterhouse in 1987, alleging that the defendant's acts and omissions assisted CBC's scheme to defraud plaintiffs of their rightful share of the Partnership profits. According to the complaint, Price Waterhouse was aware of CBC's practices and yet prepared audit reports and Special Reports which it knew or should have known contained misrepresentations of Partnership finances. Plaintiff further alleged that Price Waterhouse, in active concert with CBC, mailed the audit reports each year from 1980 through 1985 through the U.S. mail, thereby facilitating the CBC scheme to defraud plaintiffs. As a result of this conduct, WAIT alleges injury in excess of $3,000,000.00.

The complaint presents specific allegations of CBC's fraudulent conduct: intentional misappropriation, understatement and concealment of Partnership revenue and income, and conversion of Partnership property and income to CBC's own use, "with the furtherance and assistance of Price Waterhouse." Count I of the complaint charges Price Waterhouse with violations of 18 U.S.C. §§ 1962(a) and (c); Counts II through IV allege common-law causes of action against the defendant.

Price Waterhouse has moved the court to dismiss the RICO claims, asserting that the complaint fails to allege a sufficient "pattern of racketeering activity," as required under both subsections (a) and (c), and fails to show "injury" caused by the use of racketeering income, as required under section 1962(a). The defendant also asserts that the RICO claims are barred, in whole or in part, by the applicable statute of limitations. Finally, in light of these defects in Count I, Price Waterhouse urges the court to dismiss Counts II through IV, which are based upon pendent jurisdiction.

## II

### Discussion

Dismissal of a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) can be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiffs' allegations." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). In determining a motion to dismiss, the court accepts the allegations of plaintiffs' complaint as true. *City of Evanston v. Regional Transportation Authority*, 825 F.2d 1121, 1122 (7th Cir.1987), *cert. denied*, 108 S.Ct. 697 (1988). Nevertheless, a complaint must include allegations respecting all material elements of all claims asserted; bare legal conclusions attached

to narrated facts will not suffice. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir.1985). Moreover, allegations of fraud must be stated "with particularity." Fed. R.Civ.P. 9(b).

## A. Jurisdiction

The complaint bases jurisdiction on the RICO Act and on the pendent jurisdiction of the court rather than on the diverse citizenship of the parties. This court's jurisdiction over the state claims is based on its pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which it may decline to exercise if the federal RICO claims are dismissed. *Beuthe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir.1984). *See Spiegel v. Continental Illinois National Bank*, 790 F.2d 638, 650 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). Therefore, the court must first determine whether the federal RICO claims will be dismissed.

## B. The RICO Claims

To plead sufficiently the alleged civil RICO violations, WAIT Radio must allege in its complaint that Price Waterhouse used income derived from a "pattern of racketeering activity" in the operation of an enterprise, 18 U.S.C. § 1962(a),[1] and, that it conducted or participated in the conduct of the affairs of an enterprise through a "pattern of racketeering activity," 18 U.S.C. § 1962(c).[2] Price Waterhouse urges the court to dismiss the complaint of WAIT for failure to allege a sufficient "pattern of racketeering activity."

The RICO statute declares that establishing a " 'pattern of racketeering activity' requires at least two acts of racketeering activity ... within ten years." 18 U.S.C. § 1961(5). The types of "racketeering activity" forbidden by RICO are enumerated in 18 U.S.C. § 1961(1) and include mail fraud, eight acts of which are alleged to have been committed by Price Waterhouse. The predicate racketeering acts must also show both continuity and a relationship that indicate a threat of continued racketeering activity by the defendant. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 361 (1986).

The Courts of Appeals have developed different approaches to determine whether the predicate acts pled or proved in a RICO action constitute a pattern under the *Sedima* guidelines. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974–75 (7th Cir.1986). The Seventh Circuit has adopted a case-by-case method focusing on the following criteria: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* at 975. No single criterion is determinative, and a pattern may be found even where all the predicate acts occur within a single scheme or involve only a single victim. *Id.* at 975–76.

In its Motion to Dismiss, Price Waterhouse contends that the WAIT complaint fails to satisfy 5 of the 6 criteria of *Morgan*:

1. There is no "variety" in the alleged acts; the sole predicate act is mail fraud.

2. There were at most 8 mailings, since the audit reports and Special Reports were mailed on the same day.

3. The injury purportedly suffered by the *individual* plaintiffs is only derivative of the alleged WAIT injury; thus there is only 1 supposed RICO "victim."

---

1. 18 U.S.C. § 1962(a), in pertinent part, provides:

    (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate ... commerce.

2. 18 U.S.C. § 1962(c) provides:

    (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

4. The complaint alleges only a single "scheme" to defraud through the mailings of the audits and Special Reports.

5. Defendant's conduct is not alleged to have resulted in "distinct injuries" or, indeed, to have caused directly *any* injuries. It is alleged only to have failed to alert plaintiffs to injuries by CBC.

Defendant also asserts that the "continuity" requirement is not met. Although the alleged fraud spanned many years, each audit report is issued only once a year. Defendant maintains that the episodic preparation of reports does not characterize the defendant as an entity which "regularly commits" mail fraud. Indeed, defendant points out, the complaint does not allege that Price Waterhouse mailed its audit letters with specific intent to defraud WAIT, but rather that it issued the reports

> with knowledge that PRICE WATERHOUSE lacked sufficient information to certify to the accuracy of its representations made therein. Any lack of knowledge on the part of PRICE WATERHOUSE concerning the full extent of the misuse of Partnership Tradeout assets was because PRICE WATERHOUSE deliberately closed its eyes to such matters.

(Complaint, ¶ 117.) Without allegations of the defendant's fraudulent intent and misappropriation of Partnership assets, insists Price Waterhouse, its mailings of audit reports were merely "ministerial acts" necessary to execute CBC's fraudulent transactions. *See Armetta v. Hess,* Civ. No. 85 C 4688 (N.D.Ill., Jan. 21, 1987) [available on WESTLAW, 1987 WL5693].

Although Price Waterhouse bases its motion to dismiss WAIT's complaint upon the lack of "pattern" in the alleged "racketeering activity," defendant's assertions apply as well to a justification for dismissal for insufficient pleading of the "racketeering activity" itself. A complaint must allege the essential elements of a racketeering offense before those offensive acts can be considered part of a "pattern of racketeering activity."

The "racketeering activity" upon which the complaint bases its RICO claim is mail fraud: WAIT alleges that each mailing by

Price Waterhouse operated to further the scheme to defraud and to deprive plaintiffs of their rightful share of the Partnership profits, and that each mailing constituted a separate act of mail fraud and of racketeering activity.

The mail fraud statute provides that "whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses [or] representations," places such matters in the mail, has violated 18 U.S.C. § 1341. To prove a violation of the mail fraud statute, the evidence must show a scheme, intent to defraud, and the use of the mails. *United States v. Garver,* 809 F.2d 1291, 1299 (7th Cir.1987), quoting *United States v. Silva,* 781 F.2d 106, 108 (7th Cir.1986). There can be no mail fraud unless the mailing is "for the purpose of executing such scheme" (as § 1341 itself provides) and is causally linked to the scheme's success. *U.S. v. Kwiat,* 817 F.2d 440, 443 (7th Cir.), *cert. denied sub nom. Kehoe v. United States,* —— U.S. ——, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). The mailings themselves need not be fraudulent. *Id.* They must, however, be "integral parts of a scheme to defraud." *U.S. v. Green,* 786 F.2d 247, 249 (7th Cir. 1986).

The first element of mail fraud, the scheme, has been alleged in the complaint to be the "CBC scheme" which Price Waterhouse "furthered" and "facilitated." The overt acts of fraud alleged by plaintiffs are specific with respect to CBC's conduct and activities, but not with respect to Price Waterhouse's participation in the fraud. The complaint's allegations of Price Waterhouse's "awareness" of CBC's misappropriations are conclusory and vague; they do not fulfill the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Although this court reviews the allegations of a complaint liberally, it need not strain to find inferences favorable to plaintiffs which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir.1977). The complaint itself must show facts indicating in what

ways the defendant participated in the scheme. *United States v. Bonansinga*, 773 F.2d 166, 168 (7th Cir.1985), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986).

Rule 9(b) requires more than dates and titles of the mailings at issue; it demands that the complaint plead with particularity that the defendant intended to defraud plaintiffs by sending their audit statements through the mail. *Robinson v. City Colleges of Chicago*, 656 F.Supp. 555, 558 (N.D.Ill.1987). There can be no scheme to defraud without specific intent to deceive (*Id.*, citing *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980)) or the reasonable calculation of an intent to deceive as shown by examining the scheme itself. *Sun Savings and Loan Ass'n. v. Dierdorff*, 825 F.2d 187, 196 (9th Cir.1987); *Spiegel v. Continental Illinois National Bank*, 790 F.2d 638, 646 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

When fraudulent intent is not evident from the circumstances, a strong inference of the required scienter can be established by allegations of facts showing a motive for committing fraud and a clear opportunity for doing so. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). However, courts using those criteria have found that a complaint does not provide an adequate basis for scienter without a showing of facts indicating that the defendant stood to gain financially from the allegedly fraudulent transaction, *id.*, or that the defendant was linked to the creation of the scheme and had reason to defraud the plaintiff. *Gruber v. Prudential–Bache Securities,*

*Inc.*, 679 F.Supp. 165, 174–75 (D.Conn. 1987).[3]

The court also requires a showing that Price Waterhouse's mailings furthered the fraudulent plan it shared with CBC. *Spiegel*, 790 F.2d at 649. The mailings must have been caused by the schemers and also must have been made for the purpose of executing the scheme. *United States v. Wormick*, 709 F.2d 454, 462 (7th Cir.1983). The Seventh Circuit has held that a mailing of a communication could not be considered as being in furtherance of a scheme and thus not an act of mail fraud when the communication placed the allegedly defrauded party on notice of the purported fraud, making it more likely that the defendants' scheme would be detected. *Spiegel*, 790 F.2d at 649, citing *Bonansinga*, 773 F.2d at 172. The appellate court has also pointed out the distinction between mailings intended to defraud and mailings that are "offshoots" of schemes to defraud, "but honest services would have produced the same sort of mailings." *United States v. Kwiat*, 817 F.2d at 443–44. Before the services of Price Waterhouse can be considered "dishonest," the complaint against Price Waterhouse must allege an intent to defraud on the part of this defendant, and not only on the part of CBC, which is not a party in this action. As it now stands, the RICO count of this complaint falls short of compliance with the Rule 9(b) pleading requirements. Its lack of particularity renders the count defective and subject to dismissal.

It is the relationship of Price Waterhouse and CBC in the context of the fraudulent scheme that must be clarified before an analysis of the "pattern of racketeering activity" can be made.[4] As the *Morgan*

---

**3.** In *Gruber v. Prudential–Bache Securities, Inc.*, the complaint alleged that the certified public accountant preparing the financial reports and tax statements knowingly overstated the value of the partnerships' assets, falsely reported their financial well-being, and concealed the fraudulent activities of other defendants. The court found that, absent factual allegations linking the accountant to creation of the scheme and to the motive behind the fraud, the general and conclusory averments of scienter failed to satisfy

the particularity requirements of Fed.R.Civ.P. 9(b). 679 F.Supp. at 174.

**4.** The unique circumstances underlying this complaint differentiate our analysis from that followed by other courts considering RICO allegations against accountants. In *Bank of America v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986), for example, the complaint was found to be sufficient because the defendant's violations of the mail and wire fraud statutes induced the plaintiffs to extend credit to an enter-

court stated, "The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative." 804 F.2d at 976. In the case before us, some factors are clear, others depend upon sufficient allegation of fraud on the part of Price Waterhouse. For example, the complaint specifically alleges eight predicate acts, each composed of Price Waterhouse's annual preparation and mailing of an allegedly fraudulent audit report and Special Report, over an 8–year period. It is evident from the pleadings, as well, that there is only one victim. Although WAIT claims that the WAIT Partnership and the individual partners were injured, no separate injuries are alleged by the individual partners. When the injuries of the individuals are not distinct from those of the partnership because they arise from the same facts and same partnership agreement, the persons seeking to vindicate a commonly-held right through RICO are treated as a single RICO victim. *Elliott v. Chicago Motor Club Ins. Co.,* 809 F.2d 347, 350 (7th Cir.1986); *Carter v. Berger,* 777 F.2d 1173, 1176 (7th Cir.1985). *See also Warner v. Alexander Grant & Co.,* 828 F.2d 1528, 1530 (11th Cir.1987).

The complaint also clearly alleges one scheme, a scheme by CBC and its officers but "facilitated" by Price Waterhouse. However, until the defendant's role in the scheme is alleged with particularity, it is unclear whether the injury to plaintiffs was a single deprivation of partnership assets caused by CBC rather than Price Waterhouse, or a series of distinct injuries occurring with each mailing of Price Waterhouse. This court has found multiple injuries when the fraud on the part of the defendant was clear and each fraud individually resulted in a benefit to the defendant

and harm to the plaintiff. In *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985), for example, the mailings of fraudulent tax returns were treated as distinct transactions because "each tax return was a separate lie and resulted in a separate underpayment, independent of the other lies and underpayments." *Morgan,* 804 F.2d at 976 (interpreting *Phillips*). And, more recently, in *Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.1987), the appellate court reached a similar conclusion: "Each time an invoice was falsely prepared, it deprived Liquid Air of its entitlement to rent or replacement due. Therefore, each act resulted in a distinct injury to Liquid Air and a concommitant [sic] benefit to [defendant]." 834 F.2d at 1304–05. *See also Sun Savings and Loan Ass'n. v. Dierdorff,* 825 F.2d 187, 192 (9th Cir.1987) (mailings were part of a single scheme "that victimized [plaintiff] and enriched [defendant]"); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d at 50.

In the case before us, WAIT alleges that each falsely prepared financial report deprived WAIT of its entitlement to Partnership assets. However, according to the complaint, CBC was responsible for maintaining the Partnership's financial records; CBC fraudulently misappropriated the Partnership assets; and CBC prepared the fraudulent financial statements which Price Waterhouse audited. The factual allegations reflect a distinct injury to WAIT and a concomitant benefit to CBC; there is no allegation of benefit received by Price Waterhouse. With no showing of this defendant's specific injury to WAIT, this court cannot find RICO allegations against Price Waterhouse to be sufficient.

The complaint alleges that CBC, as general partner, employed Price Waterhouse to be the independent auditor for the Partnership. However, their association is depict-

prise that eventually filed bankruptcy. No such direct relationship between plaintiff and defendant is alleged in the case presently before this court. The complaint in *Department of Economic Development v. Arthur Andersen & Co.,* 683 F.Supp. 1463 (S.D.N.Y.1988), also withstood a motion to dismiss because the proffered factual allegations, including evidence outside the

record, was sufficient to expose defendants to liability for securities violations concerning the sale of securities of DeLorean corporations that later became bankrupt. The allegations herein are simply not sufficient to extend liability to this defendant for the allegedly fraudulent scheme of an entity not a party in this suit.

ed as far more than one of employment: CBC and Price Waterhouse are alleged to be "in active concert." Although WAIT chose not to claim that they actually conspired to defraud WAIT in violation of § 1962(d), it did allege that the fraud was CBC's, and Price Waterhouse "furthered," "assisted," "facilitated" the scheme as CBC's auditor.

Perhaps the plaintiff intends to allege that Price Waterhouse aided and abetted CBC in the scheme to defraud WAIT. The Seventh Circuit has not yet commented on civil RICO liability of an aider and abettor. However, the Third and Fifth Circuits agree that the common law doctrine of aiding and abetting, like that of vicarious liability, can apply to RICO if the other RICO criteria are met. *Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1356, 1359–60 (3d Cir.1987); *Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 485–86 (5th Cir. 1986). Nevertheless, to establish that a defendant violated the mail fraud statute as an aider and abettor, the plaintiff must show a shared fraudulent intent:[5]

> To prove [the defendant's] association with the mailing of the false [financial information], there must be evidence that [the aider and abettor] shared in the criminal intent of the principals. Proof of "mere negative acquiescence" in the fraud is insufficient; there must be evidence that [defendant] "committed an overt act designed to aid in the success of the venture."

*Armco Industrial,* 782 F.2d at 485 (citations omitted).

The court declines to hypothesize further on the relationship between Price Waterhouse and CBC. Because of the inadequacy of the factual allegations specific to Price Waterhouse rather than to CBC, the court finds that the complaint fails to aver fraud with particularity as required under Federal Rule 9(b). As a result, the requisite "racketeering activity" has not been pleaded sufficiently. The court cannot determine whether a "pattern of racketeering activity" has been established without a properly pleaded mail fraud claim. As the complaint now stands, it fails to state a claim under the RICO statute. However, plaintiffs are entitled to amend their complaint in light of the issues raised herein, thereby allowing the parties an opportunity to respond to the court's finding of insufficient pleading.[6] *See Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414–15 (7th Cir.1986); *Ray v. Karris,* 780 F.2d 636, 645 (7th Cir.1985).

As a result of the above determinations, the RICO count of the complaint is dismissed and, with it, the pendent common law counts. In addition, the complaint is dismissed with respect to the individual WAIT plaintiffs because their injury is only derivative to that of the WAIT partnership. Defendant's motion to dismiss the complaint is hereby GRANTED. Plaintiffs have thirty days in which to file an amended complaint, if they so choose.

SO ORDERED.

**5.** In *Armco Industrial,* the Fifth Circuit specifically held that failure to expose the existence of fraudulent invoices does not rise to the level of aiding and abetting. 782 F.2d at 486. "We decline to elevate the breach of any duty he had to notify his employer into liability for aiding and abetting a violation of the mail fraud statute." 782 F.2d at 487. *See also Laterza v. American Broadcasting Co.,* 581 F.Supp. 408, 412–413 (S.D.N.Y.1984).

**6.** In its Motion to Dismiss, Price Waterhouse briefly argues that the complaint does not allege an intent on the part of defendant to defraud the plaintiffs. However, the motion does not

assert that the plaintiffs' fraud allegations lacked the particularity required under Fed.R. Civ.P. 9(b). This circuit permits the court's own raising of an issue which might justify dismissal of a complaint as long as a sufficient basis for the court's action is apparent from the plaintiffs' pleadings. *Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986) (citing other Seventh Circuit cases). By granting plaintiffs the opportunity to amend the complaint in light of its insufficiencies, the court now allows the parties an opportunity to be heard on the issue raised *sua sponte.* 788 F.2d at 415.