**In re AMERICAN FREIGHT SYSTEM, INC., Debtor.**

**AMERICAN FREIGHT SYSTEM, INC., Plaintiff,**

v.

**INTERSTATE COMMERCE COMMISSION, Defendant.**

**Bankruptcy No. 88–41050.**
**Adv. No. 92–7139.**
**No. 92–440–SAC.**

United States District Court, D. Kansas.

Feb. 16, 1993.

Kurt A. Stohlgren, Dennis L. Davis, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for debtor.

Tanya S. Wilson, Office of U.S. Atty., Topeka, KS, Robert S. Burk, I.C.C., Washington, DC, Charles D. Stodghill, Washington, DC, for defendant.

John E. Foulston, Wichita, KS, U.S. Trustee.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to withdraw the reference of this adversary action from bankruptcy court. The defendant's motion along with the bankruptcy court's recommendation was transmitted to the clerk of the district court and assigned to this judge. Since the issues have been addressed fully in the defendant's accompanying memorandum and the bankruptcy court's recommendation, this court will decide the motion *ex parte*. *See* D.Kan.Rule 706(f).

The plaintiff American Freight Systems, Inc. ("American Freight") brought the adversary action seeking a declaratory judgment that the Interstate Commerce Commission's ("ICC") recently promulgated regulations[1] are unlawful and unconstitu-

---

1. As summarized by the defendant, these rules address a rebilling problem arising in the wake of the Supreme Court's decision in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S.

tional. The plaintiff also prays for injunctive relief, preliminary and permanent, from the ICC's enforcement of these regulations. The plaintiff moved for a temporary restraining order in the bankruptcy court arguing the regulations at issue:

(1) violate certain provisions of the debtor's confirmed plan of reorganization, and may be enjoined by the Court under 11 U.S.C.A. § 1142(b) or 105(a); (2) violate the separation of powers mandated by the United States Constitution; (3) take AFS's property without due process and impair its contracts in violation of the Constitution; (4) constitute ex post facto laws forbidden by the Constitution; (5) violate the filed rate doctrine established by the Interstate Commerce Act; and (6) exceed the ICC's jurisdiction under the ICA.

(Bankruptcy Court's Recommendation, Dk. 1 at 3). The bankruptcy court granted the plaintiff's motion, and the temporary restraining order remains in effect, by the agreement of the parties, until the defendant's motion to withdraw reference is resolved.

The defendant argues the withdrawal of reference is mandatory under 28 U.S.C. § 157(d), which provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The defendant considers the adversary action to turn on jurisdictional issues under the Bankruptcy Code, constitutional issues, and interpretational issues under the Interstate Commerce Act. The bankruptcy court agreed and recommended a finding of mandatory withdrawal of reference. In the alternative, the defendant asks for permissive withdrawal based on the critical importance of this lawsuit in determining its authority to regulate interstate commerce uniformly. The bankruptcy court recommended permissive withdrawal for the different reason that the issue here is distinct and novel from those raised in the numerous adversary actions involving American Freight which are pending before it.

The plain wording of § 157(d) mandates withdrawal when the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Despite its broad terms, this provision has been narrowly construed by courts who have looked to its legislative history. *In re Lenard,* 124 B.R. 101, 102 (D.Colo.1991). Apprehensive of what could become an " 'escape hatch through which most bankruptcy matters [would] be removed to the district courts,' " the courts have elevated the meaning of "consideration" to something more than the mere process of examining, thinking about, or taking into account. *In re White Motor Corp.,* 42 B.R. 693, 700, 704 (N.D.Ohio 1984) (quoting colloquy during House debate (130 Cong.Rec. H1849–50 (daily ed. March 21, 1984)).

The court in *White Motor,* was the first to tackle § 157(d), and it concluded that withdrawal is mandatory "only if [the] court can make an affirmative determina-

---

116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). Under the Negotiated Rates Policy, the ICC could find an unreasonable practice if a carrier attempted to collect the filed rate after negotiating a lower rate with the shipper. The Court found this policy and the ICC's use of it to contradict a statutory requirement known as the filed rate doctrine, that is, a carrier lawfully may charge and collect only its filed rate. Ostensibly relying on *Maislin,* some defunct motor carriers have begun rebilling or collecting additional

amounts for past shipments. The ICC says it promulgated the new rules in order to identify and prevent those suits which contravene the filed rate doctrine. The rules give the ICC certain authority to screen asserted undercharge claims brought by motor carriers who are no longer actively engaged in the motor carrier business or whose only active business is the collection of such claims. The ICC's denial of authority to rebill for past shipment is subject to judicial review.

tion that resolution of the claims will require substantial and material consideration of ... non-Code statutes." 42 B.R. at 705. Adopting this standard, the courts have reserved mandatory withdrawal to those cases where substantial and material consideration of non-Code federal statutes is necessary for the resolution of the proceeding. *See, e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2nd Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re Continental Airlines,* 138 B.R. 442, 444–45 (D.Del.1992); *In re Mid America Entertainment Plus, Inc.,* 135 B.R. 419, 421 (D.Kan.1991), *opinion later withdrawn.* The consideration of the non-Code law must entail more than its routine application to the facts. *In re Ionosphere Clubs, Inc.,* 922 F.2d at 995; *In re Coated Sales, Inc.,* 146 B.R. 83, 84 (S.D.N.Y.1992); *In re National Gypsum Co.,* 145 B.R. 539, 541 (N.D.Tex.1992). Withdrawal is required if the bankruptcy court would be called upon to make a significant interpretation of a non-Code federal statute. *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2nd Cir.1991); *Wittes v. Interco Inc.,* 137 B.R. 328, 329 (E.D.Mo.1992). If the non-Code issues can be said to dominate the bankruptcy issues, withdrawal may be mandatory. *In re Lenard,* 124 B.R. at 102; *In re Texaco, Inc.,* 84 B.R. 911, 921 (S.D.N.Y.1988). "[S]ubstantial and material conflicts between the Bankruptcy Code and other federal laws" present another instance warranting mandatory withdrawal. *American Tel. & Tel. Co. v. Chateaugay Corp.,* 88 B.R. 581, 588 (S.D.N.Y.1988); *see In re Continental Airlines,* 138 B.R. at 447.

■ The burden is on the movant to make a timely motion demonstrating that the proceeding qualifies for mandatory withdrawal. *In re Continental Airlines,* 138 B.R. at 445. It is not enough only to speculate about which issues could arise and whether they will be significant in resolving the proceeding. *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. 108, 111 (N.D.Tex.1989).

■ Though the courts unanimously agree on a narrow construction of § 157(d), there is a division on what level of consideration is required of title 11 issues. Several districts have taken the minority view of requiring also a substantial and material consideration of title 11 law. *See, e.g., Brizendine v. Montgomery Ward & Co., Inc.,* 143 B.R. 877, 878–79 (N.D.Ill.1992) (citing 1 Lawrence P. King, ed. *Collier on Bankruptcy* ¶ 3.01 at 3–67, 3–68 (15th ed. 1991)); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207, 209 (W.D.N.C. 1990); *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. at 111; *In re Anthony Tammaro, Inc.,* 56 B.R. 999, 1004–1006 (D.N.J.1986). These cases read "both title 11 and other laws" literally and discount § 157(d) as one of the legislative response to the problems created by *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 597 (1982). *In re Anthony Tammaro, Inc.,* 56 B.R. at 1005–1006. These courts consider "both title 11 and other law" to have meaning only if both bodies of law are given substantial and material consideration in the resolution of the proceeding. *In re Anthony Tammaro, Inc.,* 56 B.R. at 1006. In other words, if the proceeding can be resolved with only routine consideration of the Bankruptcy Code issues, then withdrawal is not mandatory.

The other side, where the majority of the courts have set up camp, believes the substantial and material consideration of a title 11 issue is not a prerequisite to mandatory withdrawal. *In re St. Mary Hosp.,* 115 B.R. 495, 497 (E.D.Pa.1990), *see, e.g., In re Ionosphere Clubs, Inc.,* 142 B.R. 645, 647 (S.D.N.Y.1992); *In re Continental Airlines,* 138 B.R. at 445; *Wittes v. Interco Inc.,* 137 B.R. at 329; *In re Auto Specialties Mfg. Co.,* 134 B.R. 227, 228 (W.D.Mich. 1990); *In re Quaker City Gear Works, Inc.,* 128 B.R. 711, 713 (E.D.Pa.1991); *In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 127–28 (M.D.N.C.1991); *Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887, 892 (D.Del.1991). The purpose of § 157(d) is to take from the bankruptcy courts those matters requiring the application of non-bankruptcy federal statutes affecting interstate commerce and give them to the district courts which have more experience in applying those laws. *In re St. Mary Hosp.,* 115 B.R. at 497; *see In re*

*Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986) (Congress intended the district courts to interpret significant provisions of non-Code federal statutes). Besides being incongruous, the purpose of § 157(d) would be frustrated if substantial and material issues of non-Code law remained in the bankruptcy court merely because the proceeding lacked Code issues of a similar magnitude. *In re Contemporary Lithographers, Inc.*, 127 B.R. at 127–28; *In re St. Mary Hosp.*, 115 B.R. at 497; *see Hatzel & Buehler Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D.Del.1989) ("Such a strict interpretation of the law 'would effectively defeat the attempts of the Code to rationalize bankruptcy litigation.'" (quoting *In re Johns–Manville Corp.*, 63 B.R. at 602) (other citations omitted)). The Second Circuit, the only circuit to have discussed § 157(d) in any detail, applied the standard from *White Motor* in looking only to whether substantial and material consideration of non-Code federal statutes were necessary to resolving the proceeding. *In re Ionosphere Clubs, Inc.*, 922 F.2d at 995.

Congress intended complex title 11 issues to remain in the capable and expert hands of bankruptcy judges. *In re White Motor Corp.*, 42 B.R. at 704. Congress also intended to have the significant issues involved in applying other federal statutory schemes withdrawn to the district courts. So, what reason would Congress have for requiring a substantial and material issue of bankruptcy law before allowing the district court to interpret critical provisions of other federal statutes? This question is not answered by the courts in the minority camp. Even a literal reading of a statute should be consistent with and in furtherance of the statute's obvious purpose.[2] The interpretation espoused by the minority camp is inconsistent with and undermines the intent of Congress. A significant issue of non-Code law, intended for the district courts to decide, would not be subject to mandatory withdrawal simply because an accompanying significant issue of Code law, intended for the bankruptcy courts to decide, was not presented.

The "consideration of ... title 11" in § 157(d) could be read as reiterating that this provision is intended to address only those cases which were properly referred to the bankruptcy court in the first instance.[3] Whatever its reasons, Congress, in this court's judgment, was not concerned with the quality or nature of the issues under bankruptcy law when it allowed for mandatory withdrawal. Following the majority view, the court believes it is enough for mandatory withdrawal if the resolution of the proceeding requires consideration of bankruptcy law and the substantial and material consideration of non-bankruptcy federal statutes regulating activities affecting interstate commerce.

---

**2.** "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (citations omitted). The literal language of a statute is applied unless it would yield "irreconcilable inconsistencies or clearly absurd results that Congress could not have intended." *Resolution Trust Corp. v. Westgate Partners, Ltd.*, 937 F.2d 526, 531 (10th Cir.1991).

**3.** The court in *In re White Motor Corp.* offered this as part of the legislative history to § 157(d):

Unlike the 1978 Act, however, S. 1013 gives the district court far greater control over the handling of all bankruptcy cases and proceedings. Under [the proposal], the district court judge may recall, on its own motion, any case or proceeding referred to the bankruptcy court. Also, a motion for recall of any case or proceeding may be made either by a bankruptcy judge or a party. Recall by the district court is generally discretionary, except that recall is mandatory in two instances—in any proceeding involving a claim or cause of action which is not one arising under title 11; and (2) in any proceeding where the district determines that Federal laws regulating organizations or activities affecting interstate commerce are involved—the Committee intends that this second instance of mandatory recall be construed narrowly—basically to cover only those organizations or activities which immediately and directly affect interstate commerce.

42 B.R. at 699 (Senate Report at 16). By including "both" and "Title 11" in § 157(d), Congress may have intended only to emphasize the distinction between the two instances where withdrawal was mandatory.

American Freight's adversary action cannot be resolved without giving substantial and material consideration to whether the ICC had the authority under the Interstate Commerce Act to promulgate the recent regulations at issue. The interpretation of the Act, in particular the filed rate doctrine, will have a substantial impact on interstate commerce. Title 11 issues regarding the bankruptcy court's jurisdiction and power to enjoin the ICC's regulations and rules also loom large in this proceeding. For these reasons, the district court believes this is an appropriate case for mandatory withdrawal.

IT IS THEREFORE ORDERED that the defendant's motion to withdraw is granted;

IT IS FURTHER ORDERED that this memorandum and order shall be filed in the bankruptcy court;

IT IS FURTHER ORDERED that the adversary action shall proceed in the district court. The matter is referred to the Magistrate Judge for purposes of conducting all pretrial discovery and scheduling.