In the Matter of VICARS INSURANCE
AGENCY, INCORPORATED,
Debtor–Appellee.

Appeal of UNITED NATIONAL INSUR-
ANCE COMPANY, Creditor, Diamond
State Insurance Company, Creditor, and
Hallmark Insurance Company, Creditor.

In the Matter of E&S FACILITIES,
INCORPORATED, Debtor–
Appellee.

Appeal of UNITED NATIONAL INSUR-
ANCE COMPANY, Creditor, and Dia-
mond State Insurance Company, Credi-
tor.

Nos. 95–2712, 95–2713.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1995.

Decided Sept. 19, 1996.

Douglas B. King, Mary Titsworth Chandler, Wooden, McLaughlin & Sterner, Indianapolis, IN, Nathaniel Metz, Kenneth E. Aaron, Noreen M. Walsh, Buchanan Ingersoll Professional Corporation, Philadelphia, PA, George L. Cass (argued), Buchanan Ingersoll Professional Corporation, Pittsburgh, PA, for United National Insurance Company, Diamond State Insurance Company, Hallmark Insurance Company in No. 95-2712.

Beth Kramer, Office of the United States Trustee, Indianapolis, IN, for U.S. Trustee in Nos. 95–2712, 95–2713.

Thomas C. Scherer (argued), Bingham, Summers, Welsh & Spilman, Indianapolis, IN, R.C. Richmond, III, Jerald I. Ancel, Sommer & Barnard, Indianapolis, IN, for Vicars Insurance Agency, Incorporated in No. 95-2712.

Douglas B. King, Wooden, McLaughlin & Sterner, Indianapolis, IN, Nathaniel Metz, Kenneth E. Aaron, Noreen M. Walsh, Buchanan Ingersoll Professional Corporation, Philadelphia, PA, George L. Cass (argued), Buchanan Ingersoll Professional Corporation, Pittsburgh, PA, for United National Insurance Company, Diamond State Insurance Company in No. 95-2713.

Thomas C. Scherer (argued), Bingham, Summers, Welsh & Spilman, Indianapolis, IN, George W. Hopper, Jeffrey E. Ramsey, Hopper & Galliher, Indianapolis, IN, James M. Carr, Baker & Daniels, Indianapolis, IN, for E&S Facilities, Incorporated in No. 95–2713.

Before WOOD, Jr., COFFEY, and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

These consolidated cases require us to consider the scope of the mandatory "withdrawal of reference" provision of the Bankruptcy Code, 28 U.S.C. § 157(d). This statute requires district courts to reassume primary authority over a proceeding formerly delegated to the bankruptcy court when confronted with certain interpretive circumstances. While the statutory language in question is seemingly straightforward, the many and varied interpretations of this provision by bankruptcy and district courts demonstrate that its "plain meaning" has been somewhat difficult to discern. Despite the varied approaches, the question has received little attention from the courts of appeals and is a matter of first impression in this circuit.

## I. BACKGROUND

Appellants United National Insurance Company, Diamond State Insurance Company, and Hallmark Insurance Company are all part of the same corporate "family"[1] called the United National Group ("UNG"). In late 1991 these companies concluded an agreement with Transportation Underwriters, Inc. ("TUI"), a firm controlled by James K. Culley, allowing TUI to underwrite physical damage insurance for commercial vehicles according to certain terms. One term of particular relevance required TUI to write only policies limited to one month's duration, with renewal possible but subject to the same limited time basis. The agreement also permitted "continuous" policies, but required that these too be subject to monthly premium charges.

Soon after the agreement with TUI was concluded, Culley delegated the obligations of TUI to Vicars Insurance and E&S Facilities ("Vicars," "E&S," or "debtors"), other entities under his control. UNG alleges that these companies then intentionally violated the agreement by selling policies and collecting premiums on an annual rather than a monthly basis. UNG claims that Vicars and E & S falsely reported the policy terms to UNG as monthly (not annual) and improperly retained or diverted to other uses all but a small fraction of the premiums, all further violations of the agreement. Such practices allegedly occurred over about a year and involved more than 4800 insurance policies.

This alleged financial scheme was eventually discovered or otherwise went awry. The

---

1. Hallmark's parent is Diamond State, whose parent, in turn, is United National.

record is unclear as to the next events, but these specifics need not detain us. UNG soon demanded various payments in accordance with the agreement. When these demands went unsatisfied, UNG filed a civil action in the United States District Court for the Eastern District of Pennsylvania in June, 1994 against Vicars, E & S, and one Richard Trakimas, an officer of Vicars. Based on the policy and premium irregularities described above, the complaint alleged five counts including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, common law fraud, civil conspiracy, and unjust enrichment. This suit forced Vicars and E & S into bankruptcy; both companies filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Indiana.

UNG responded to these filings with a motion requesting the district court in Indianapolis to withdraw the reference of their civil claims from the bankruptcy court in each case. Some of the companies within UNG then filed proofs of claims for recovery of premiums due and treble damages amounting to several million dollars. The debtors answered with objections to these claims on various grounds and a counterclaim for tortious interference with contract. Both district judges denied the motions to withdraw the reference, with Judge McKinney joining the views of Judge Barker. Thereafter the district court judges certified each order of denial for an interlocutory appeal. This court granted permission for the same and ordered consolidation of the two appeals for argument.

## II. DISCUSSION

As it is a question of law, we will review the denial of a motion to withdraw the reference to a bankruptcy court on a plenary basis.

Statutory language often finds its way into our law books by a tortuous path, and the mandatory withdrawal provision at issue here is no exception. Its immediate source, the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Amendments Act" or "Act"), was enacted by Congress in response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Court's plurality opinion in *Marathon* has been the subject of much academic speculation and commentary, and its precise contours remain open to debate. It will suffice here to note that in general terms the decision limited the power of Congress to assign adjudicative authority to federal bankruptcy judges.[2] Much bankruptcy law was thus rendered open to attack on constitutional grounds. Attempting to rectify this problem and abide by the constitutional constraints of *Marathon*,[3] Congress passed the Amendments Act. The Act gave the district courts original jurisdiction over all cases arising under title 11 of the Bankruptcy Code, *see* 28 U.S.C. § 1334(b), but also allowed federal courts to "refer" bankruptcy cases to the bankruptcy judges for the district automatically. *See* 28 U.S.C. § 157(a). This authority to refer was tempered, however, with a provision that the reference may or shall be withdrawn in certain situations:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of a party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both

**2.** "The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985) (citations omitted).

**3.** There is some dispute as to whether the mandatory withdrawal provision of § 157(d) is properly considered a matter of constitutional mandate or a simple legislative preference. *Compare In re White Motor Corp.*, 42 B.R. 693, 699–701 (N.D.Ohio 1984) (finding the measure constitutionally mandated) *with In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1006 (D.N.J.1986) (finding mere legislative decision). It is unnecessary for us to enter this debate today.

title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The second sentence quoted above, the so-called mandatory withdrawal provision at issue here, has spawned several cases and generated a variety of readings. This is perhaps not surprising considering its several ambiguous phrases, which combine lower court discretion with flexible terms such as "resolution," "consideration," and "affecting."

Appellants argue that the mandatory withdrawal provision should be interpreted almost literally, but concede that the "consideration" required of at least the non-title 11 law must be "material." This expansive view of the term "consideration" has commanded little support. Overwhelmingly courts and commentators agree that the mandatory withdrawal provision cannot be given its broadest literal reading, for sending every proceeding that required passing "consideration" of non-bankruptcy law back to the district court would "eviscerate much of the work of the bankruptcy courts," In re *Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990) (quoting 1 *Collier on Bankruptcy* para. 3.01 (15th ed. 1987)).[4] From a litigant's perspective, such a reading would also create an "escape hatch" by which bankruptcy matters could easily be removed to the district court. See Note, *Closing the Escape Hatch in the Mandatory Withdrawal Provision of 28 U.S.C. § 157(d)*, 36 U.C.L.A. L.Rev. 417 (1988). This might in turn encourage delaying tactics (perhaps further draining the resources of the debtor), forum shopping, and generally unnecessary litigation. The legislative history of the Act reveals that this concern was recognized by Congress (the term "escape hatch" comes from the congressional debates) and that the measure's author and proponents denied any such effect, stressing that they intended the provision to be read narrowly. See 130 Cong. Rec. H1849–50 (daily ed. Mar. 21, 1984) (remarks of Rep. Kastenmeier); S.Rep.

No. 55, 98th Cong., 1st Sess. 16 (1983) ("the Committee intends ... mandatory recall [to] be construed narrowly.").

As we indicated, courts have uniformly agreed that a narrow interpretation is indeed required. To achieve this, however, several avenues have been taken. The first court to consider § 157(d) relied on the wording of the section, which requires withdrawal only when "consideration" of both title 11 and non-Code federal statutes is necessary for the "resolution" of a case or proceeding, together with "the congressional goal of having expert bankruptcy judges determine complex Code matters to the greatest extent possible," and concluded that withdrawal should be granted only if the current proceeding could not be resolved without "substantial and material consideration" of the non-Code federal law. In re *White Motor Corp.*, 42 B.R. at 704. This "substantial and material" gloss has been accepted as an appropriate reading of the statute and effectuation of Congress' intent by most courts, including the Second Circuit. See *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). We join that view today.

Some courts and commentators have attempted to narrow the statute by focusing on other elements of the provision, including the usage of the words "both" and "and" ("*both* title 11 ... *and* other laws") to determine whether "substantial and material consideration" is required of title 11 law in addition to non-Code federal law. See *American Freight Sys. v. I.C.C. (In re American Freight System)*, 150 B.R. 790, 793 (D.Kan. 1993) (and citations therein). Still others have analyzed whether or how the non-Code law in question "affects" interstate commerce. See, e.g., In re *Blackman*, 55 B.R. 437, 450 (Bankr.D.D.C.1985); In re *Rubin Bros. Footwear, Inc.*, 73 B.R. 346, 351 (S.D.N.Y.1987). Neither party to this appeal questions the fact that this proceeding requires consideration of title 11 law, nor do they contest the proposition that the RICO

---

**4.** "[A]ny reading of § 157(d) which limits bankruptcy court jurisdiction to questions arising solely under the [Bankruptcy] Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous Code provisions themselves require reference to other state and federal law." In re *White Motor Corp.*, 42 B.R. at 703.

statute "affects" interstate commerce. We will thus leave these finer issues of interpretation for another day. We do note, however, that whatever one considers the rationale for the mandatory withdrawal provision to be-constitutional concerns, legislative preference, expertise of the respective courts, etc.—it would be somewhat anomalous to require withdrawal of a proceeding that contains, say, both title 11 and complex antitrust interpretation issues, but leaves to the bankruptcy court those cases or proceedings that require complex analysis of the antitrust statutes alone.

Thus we return to the "substantial and material consideration" test. A helpful adjective has been added, but this too is imprecise and has generated several readings. What constitutes "substantial" consideration of a non-title 11 statute? Answers to this question have a broad range. At the least restrictive end of the spectrum, one court has held that this requirement is met if a proceeding merely "presents a non-Title 11 federal question which will affect the outcome of the proceeding." *Contemporary Lithographers, Inc. v. Hibbert, (In re Contemporary Lithographers)*, 127 B.R. 122, 127 (M.D.N.C. 1991).

The majority of courts have taken a narrower view, however, examining a variety of factors. These generally require that the issues in question require more than the mere application of well-settled or "hornbook" non-bankruptcy law; "significant interpretation" of the non-Code statute must be required.[5] *United States v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 63 B.R. 600, 603 (S.D.N.Y.1986); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (also using term "substantial interpretation").

The most restrictive interpretations have identified particular contexts as the only situations appropriate for mandatory withdrawal.

These have included proceedings where non-title 11 issues "dominated" bankruptcy issues, *see In re Lenard*, 124 B.R. 101, 102 (D.Colo.1991), or where the proceeding presented a conflict between statutes, a question of first impression, or a constitutional challenge. *See In re Adelphi Institute*, 112 B.R. 534, 537 (S.D.N.Y.1990).

▪ We believe the proper approach to mandatory withdrawal analysis lies in the middle of this spectrum. Given the discretion granted to district courts by § 157(d), there is little reason to assume that withdrawal is required by the mere presence of a non-title 11 issue, even if that issue is outcome determinative. This reading, which makes withdrawal virtually automatic, reads out of the statute both district court discretion and any "consideration" whatsoever.[6]

Delimiting specific contexts where mandatory withdrawal is required is also a problematic approach. Such identification is useful only to the extent that the context in question will always require a court to devote substantial consideration to the issues involved. This may or may not be true in every particular instance. In any event the specifics of the particular context or posture should be fleshed out by the moving party to demonstrate that the grounds for withdrawal are satisfied (i.e., substantial and material consideration is required). That party ultimately bears the risk of nonpersuasion. *In re Michigan Real Estate Ins. Trust*, 87 B.R. 447, 459 (E.D.Mich.1988) (citations omitted).

▪ In accordance with the statute's terms, then, the guiding question must be whether consideration is required, not merely the context in which the issue is presented. Here unfortunately no bright line can be drawn. Courts have defined "consideration" to mean "something more than the mere process of examining, thinking about, or tak-

---

5. The court in *Johns–Manville* stated that:

It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring a significant *interpretation* of federal laws that Congress would

have intended to have decided by a district judge rather than a bankruptcy judge. *In re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986).

6. We note that "mandatory" withdrawal is never wholly "automatic" since it requires the motion of a party.

ing into account." *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y.1993); *American Freight Sys.*, 150 B.R. at 792. This definition is similar to the application/interpretation distinction first drawn in *Johns–Manville*, which we believe identifies the heart of the matter. This approach is in accordance with the terms of § 157(d), Congress' intent, and the practicalities of litigation. We therefore hold that as far as non-title 11 issues are presented, mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law. The legal questions involved need not be of "cosmic proportions," *In re Rimsat, Ltd.*, 196 B.R. 791, 799 (N.D.Ind.1995), but must involve more than mere application of existing law to new facts.

■ We also note a decision regarding mandatory withdrawal does not prevent district court involvement. Indeed, a safety device is provided by the other sentence of § 157(d). This "permissive" withdrawal provision allows a district court to withdraw, at any time, even a part of a case or proceeding on its own motion or that of a party, for cause shown. *See* 28 U.S.C. § 157(d). Thus even if the court determines that mandatory withdrawal does not apply, it may prefer to withdraw or limit the reference nonetheless. Some bankruptcy courts, even though they are without jurisdiction to hear a motion for withdrawal, *see* 28 U.S.C. § 157(d), make recommendations to the district court as to whether this should be done. *See, e.g., In re Golden Gulf, Ltd.*, 73 B.R. 685, 686 (Bankr. E.D.Ark.1987) (recommendation regarding mandatory withdrawal); *In re Michigan Real Estate Ins. Trust*, 87 B.R. at 465 (recommendation regarding discretionary withdrawal).

■ This brings us to the application of these principles to this particular case. UNG claims that even under a narrow interpretation of § 157(d) withdrawal is required because of the RICO violations alleged in its civil complaint. These violations are based in part upon theories of aiding and abetting liability. While this circuit has not com-

mented on the possibility of aiding and abetting liability in civil RICO actions, others have approved the theory. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 270 (3d Cir.1995) (aiding and abetting liability appropriate where defendant knew of substantive act and acted with intent to facilitate it); *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485 (5th Cir.1986) ("mere negative acquiescence" is not enough to establish aiding and abetting civil liability under RICO; defendant must have affirmatively acted in a way that facilitated success of illegal action).

Since UNG filed its civil complaint in the Third Circuit, it contends that it is unclear whether the law of that circuit or this one (the circuit in which the bankruptcy claim is adjudicated) should apply. Thus UNG argued to the district court that:

> issues may arise in the consideration of [UNG]'s RICO claims which, although settled in favor of [UNG] in those jurisdictions in which such issues have been entertained, may be questions of first impression should the law of the Seventh Circuit rather than the Third Circuit be found to apply in this case.

The district court found that the possibility that RICO claims "might involve novel issues" was not enough to trigger mandatory withdrawal. The court characterized UNG's concerns as at most "speculative" and at worst "completely hypothetical." Furthermore, the court stressed that the bankruptcy court was not without guidance on the issue from other courts, including district court holdings within this circuit. The court concluded that "[e]ither way, UNG falls far short of establishing 'that this case involves anything more than a routine application of RICO law.'" *In re E & S Facilities*, 181 B.R. 369, 373 (S.D.Ind.1995) (quoting *In re Laventhol & Horwath*, 139 B.R. 109, 116 (S.D.N.Y.1992)).

We agree with this conclusion. UNG may be without guidance as to which circuit's law will definitively apply to the claim, but this conjectural concern by itself (for UNG offered little else to the district courts) does not necessarily trigger "substantial and material consideration" of a non-title 11 statute. Similarly, neither is it enough that an issue simply has not been considered at the circuit

court level. As the district court recognized, law from lower courts exists in both circuits (and others) for a bankruptcy judge's guidance and application. In the Seventh Circuit, for example, district courts have offered guidelines as to what elements must be met if civil RICO aiding and abetting liability were to be recognized at the circuit level. *See FMC Corp. v. Boesky,* 727 F.Supp. 1182, 1200 (N.D.Ill.1989); *WAIT Radio v. Price Waterhouse,* 691 F.Supp. 102, 108 (N.D.Ill. 1988). So too other district courts have recognized aiding and abetting liability in a civil RICO context. *See Downing v. Halliburton & Assoc.,* 812 F.Supp. 1175, 1182 (M.D.Ala. 1993), *aff'd,* 13 F.3d 410 (11th Cir.1994); *In re Sahlen & Assoc. Sec. Litig.,* 773 F.Supp. 342, 367 (S.D.Fla.1991); *Morrow v. Black,* 742 F.Supp. 1199, 1203 (E.D.N.Y.1990).

For these reasons we agree that UNG failed to satisfy its burden of persuasion on the issue of mandatory withdrawal, and the decisions of the district courts are accordingly AFFIRMED.